AMELIA MIKSHIS, executrix, *vs.* ROMISIS PALIONIS
& others.

Suffolk.   November 9, 1962. — January 8, 1963.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Trust,* Of personal property, Oral trust.   *Gift.*

In the circumstances, where it appeared that an elderly immigrant, some
months before his death, changed a savings bank account in his own
name into an account in his name "In trust for . . . [a cousin]  Case of
death of trustee pay to beneficiary," that the depositor kept possession
of the bankbook and never showed it to the cousin, and that he said to
the cousin "I got you a book," to which the cousin replied "Keep it; I
do not need the money.  You need the money," the proper conclusions
were that there was notice of the trust to the cousin, that the cousin did
not reject the trust, and that the trust was valid and entitled the cousin
to the proceeds of the account upon the death of the depositor.

PETITION IN EQUITY filed in the Probate Court for the
county of Suffolk on July 22, 1960.

The case was heard by *Wilson,* J.

*Thomas B. Shea* for the respondent.

*Walter G. Murphy,* for the petitioner, submitted a brief.

SPIEGEL, J.   This is a petition in equity to determine the
ownership of a savings bank deposit in the South Boston
Savings Bank standing in the name of Charles Mikenas in
trust for Charles Palionis.   The petitioner is the execu-
trix of the will of the depositor, one Calas Mikenas (alias
Charles Mikenas).   The case is before us on the appeal of
the respondent Romisis Palionis (alias Charles Palionis)
from a decree entered by the judge that the savings bank
deposit is "the property of the Estate of Calas Mikenas
. . . and the respondent Romis[is] Palionis is entitled to
no interest therein" and that he "forthwith turn over to"
the petitioner the savings bankbook.   The evidence is not
reported.

The judge made a report of material facts which are herewith summarized. The testator, a native of Lithuania, emigrated to the United States sometime prior to 1923 and worked as a laborer until his retirement. On August 8, 1940, he opened a savings bank account at the South Boston Savings Bank under the name of Tanie Mikenas, personally signing the signature card. The initial deposit was $300 and from 1940 to 1945 he made nineteen additional deposits which increased the amount, with interest, to $4,272.26. Thereafter, interest alone, as of April 16, 1958, increased the account to $6,099.83. On that date a withdrawal slip for the total amount in the account was signed by the testator "with his mark only, — obviously tremulous" and the account was "closed out." The testator then opened a new account in the same bank for $6,099.83, the typed legend on the bankbook reading, "Charles Mikenas (X). In trust for Charles Palionis   Case of death of trustee pay to beneficiary." The signature card for this new account also appears to have been signed by the testator with his mark only and it states, "In trust for Charles Palionis," and at the side of this statement appear the words, "cousin   Lithuania   200 H. St. S. B." There were "no further deposits, and no withdrawals" from this account. Only two entries appear in the book: the opening entry and added interest on October 15, 1958.

The respondent Palionis, a rent collector, knew the testator for about fifteen years and on occasion took him to the doctor's office. The testator, "an old and sick man," never showed Palionis the bankbook. However, "[s]ome time before" the testator died he did say to Palionis, "I got you a book," to which the respondent replied, "Keep it; I do not need the money. You need the money."

Palionis was not with the testator at the bank when the account was opened on April 16, 1958. He had never seen the signature card "up to the date of the trial," nor had he ever had possession of the bankbook during the lifetime of the testator. He did not see the bankbook until four days after the testator's death.

The testator died on December 1, 1958, at the reported age of eighty. A will was allowed which he had executed in 1952 and which included a $1,000 bequest to "Romisis Palionis, my cousin." His estate totaled $40,116.46 of which all but $662.04 was represented by five savings bankbooks, including the disputed one, all of which books were found in the testator's bedroom.

The petitioner concedes that a trust may be created by parol and that retention of possession and control of the alleged trust res is not inconsistent with the creation of a valid trust. She also concedes that, "in the case of a formal declaration of trust with its terms expressly set out in a clear and unambiguous manner, even notice and acceptance by the beneficiary and delivery of the trust res or trust instrument is unnecessary, as in *Cohen* v. *Newton Savings Bank,* 320 Mass. 90."

She contends, however, that the instant case does not come within the above stated rule and that notice and acceptance by the beneficiary are essential.

The respondent Palionis contends that "under the principles" of *Cohen* v. *Newton Sav. Bank, supra,* a valid trust was established for the benefit of Palionis.

"[W]here the trust is an informal voluntary trust of the sort under discussion, the law of this Commonwealth requires notice to the cestui or to some person in his behalf, and at least implied acceptance by the cestui, in order to perfect the creation of the trust." *O'Hara* v. *O'Hara,* 291 Mass. 75, 78. *Day Trust Co.* v. *Malden Sav. Bank,* 328 Mass. 576, 578–579. *Berger* v. *Berger,* 333 Mass. 540, 544. Notice to the beneficiary is regarded as "necessary proof of the finality of the alleged settlor's action." *Aronian* v. *Asadoorian,* 315 Mass. 274, 277. *Berger* v. *Berger, supra,* 544. Although the rule is well settled in Massachusetts it is not the prevailing rule in other jurisdictions, see Scott on Trusts (2d ed.) § 36, and Restatement: Trusts, § 36; and "the trend of our decisions has been to confine, rather than to extend, this rule." *New England Trust Co.* v. *Sanger,* 337 Mass. 342, 348.

We need not decide whether *Cohen* v. *Newton Sav. Bank,* *supra,* which involved a formal declaration of trust written on the back of the signature card, is controlling of the case before us.   We believe that in the case before us there was notice to the beneficiary.   Subsequent to the testator transferring funds from an account standing in his own name to one ''in trust'' for Palionis payable in ''case of death of trustee . . . to beneficiary,'' the testator said to Palionis, ''I got you a book.''   To rule that there should be a positive identification of the book by number or even to name the bank holding the deposit is to adopt an unrealistic approach and, in effect, thwart the intention of the parties.

The testator was an elderly immigrant laborer, obviously incapable of facility in the use of language.   He owned a number of bankbooks.   We think his statement to Palionis, considering the relationship of the parties and their status in life, was an ordinary method of expression and one that the testator and Palionis clearly understood.   There was sufficient ''proof of the finality'' of the testator's action.

The petitioner argues that when the testator informed Palionis that he ''got'' him a book and Palionis replied with the words, ''Keep it; I do not need the money.   You need the money,'' thereby Palionis ''expressly disavowed any interest in the account.''

This contention might have considerable force if we were to isolate this statement and rest our decision solely on the basis of the few words uttered by Palionis.   However, all of the circumstances attendant to the conversation, the relationship existing between the two men, the financial status of the testator as shown by the four remaining bankbooks, the motive of Palionis in making the remark, ''Keep it; I do not need the money.   You need the money,'' which we may reasonably infer, plus the subsequent actions of the parties, should be considered in determining whether Palionis ''disavowed any interest in the account.''

It would have been completely pointless for the testator to have changed the account from one in his own name to that of trustee for Palionis if he had not intended to create

the trust. If the testator had construed the reply of Palionis to be a refusal or a repudiation of the trust it would have been a simple matter for the testator to have named a new beneficiary or to have once again closed the account and reopened it in his own name.

It may be noted that after the conversation between the testator and Palionis the testator did nothing that would even indicate that he considered the reply of Palionis to be a rejection of the trust. Palionis's reply was not such a "refusal" to accept as to imply either a positive denial or at least a mental determination not to accept. See Black's Law Dictionary, page 1515.

It would be illusory for us to treat the words of Palionis as being other than in the nature of a thoughtful protest by a considerate friend. When Palionis was informed of the trust he did not clearly and unequivocally reject or renounce its benefits. We are of opinion that Palionis's statement did not constitute a repudiation of his status as beneficiary under the trust. See *Stoehr* v. *Miller,* 296 Fed. 414, 425 (2d. Cir.).

The final decree must be reversed and a new final decree entered in which it is adjudged that South Boston Savings Bank book #214822 is the property of the respondent Palionis, and that the proceeds thereof are assets of said Palionis. Costs of this appeal may be allowed to the respondent Palionis, payable out of the estate of the testator, in the discretion of the Probate Court.

*So ordered.*