E. WHITEHEAD, INC. *vs.* JEREMIAH F. GALLO & others.

Worcester. January 9, 1970. — April 8, 1970.

Present: WILKINS, C.J., CUTTER, KIRK, SPIEGEL, & REARDON, JJ.

*Way,* Private: creation. *Easement. Equity Pleading and Practice,* Appeal.

Where a deed conveying a parcel of land abutting an extension of a way provided that "It is agreed by the grantee that the lines defined in this Parcel" for the extension "are substantially correct but shall be in accordance with the lines as established by final survey . . . and approved by the Planning Board," and that the parcel was conveyed "together with rights of way over" the extension, it was held that the

---

[1] The rule in the Federal courts is the same. *Steele* v. *United States No. 2,* 267 U. S. 505, 510–511. *Ker* v. *California,* 374 U. S. 23, 33.

grant of such rights was unconditional and took effect irrespective of whether the planning board should approve a subdivision plan showing the extension. [219]

Where the trial judge in a suit in equity entered a final decree for a reason which this court upon appeal determined was wrong but this court reached the same result for another reason, the final decree was affirmed. [219]

BILL IN EQUITY filed in the Superior Court on November 10, 1967.

The suit was heard by *McLaughlin*, J.

*Matthew R. McCann* for the defendants.

*William J. LeDoux* for the plaintiff.

SPIEGEL, J.   In this suit for a declaratory decree the plaintiff seeks to establish a right of way over land owned by the defendants in Worcester known as the Chiltern Hill Drive Extension.   The trial judge made "Findings, Rulings and Order for Decree."   A final decree was entered favorable to the plaintiff from which the defendants appealed. Subsequent to the argument before this court the parties filed a stipulation.[1]

We summarize the pertinent findings of the judge.   The plaintiff owns a parcel of land in fee abutting the Chiltern Hill Drive Extension.   The plaintiff derived its title by deed from one Edward Lavallee to Albert and Marion Brunell dated June 16, 1944.   Although this deed was for five separate parcels of land, we are here concerned solely with Lot #5.   Relative to this lot the deed contained the following provision: "It is agreed by the grantee that the lines defined in this Parcel 5 for Aylesbury Road and Chiltern Hill Drive Extension are substantially correct but shall be in accordance with the lines as established by final survey by Francis B. Thompson, C. E. and approved by the Planning Board."

The deed further provided: "Each of the foregoing parcels is conveyed together with a right of way over Aylesbury

---

[1] The parties stipulated that it was their intention that a document entitled "Agreement of all Material Facts" filed in the Superior Court, with the approval of the trial judge, following the entry of a final decree, was not to serve as a "Case Stated" or "Agreed Statement of Facts."

Road and Brookshire Road as shown on said plan herein-
before referred to and said Parcels 4 and 5 are conveyed
together with rights of way over said Extensions of Ayles-
bury Road and Chiltern Hill Drive both of which are to be
fifty (50) feet wide."

In April, 1953, Lavallee applied for a building permit for
a lot "which later became the Gallo lot." He then filed a
plan dated April 18, 1953, with the Worcester planning
board (board) seeking "approval of the street layout for an
additional two hundred (200) feet." The plan was given
tentative approval provided that Lavallee complied with
the new subdivision regulations of the board which stated
that "sub-dividers had to construct their own streets and
sewers" within ninety days and at their own expense. Final
approval of the plan was never granted. However, the final
approval of the proposed street extension was withheld solely
because Lavallee did not want to incur the expense of con-
structing streets and sewers and not because the board en-
countered any difficulty with the lines or location of that
extension. Therefore, "[t]his preliminary approval granted
by the . . . [board] satisfied that provision of the Lavallee
deed to Brunell which provided that the lines for Aylesbury
Road and Chiltern Hill Drive extensions — shall be in ac-
cordance with the lines as established by final survey by
Francis B. Thompson, C. E. — and 'approved by the
planning board.'"

Lavallee filed a plan with the board in June, 1954, which
contained a layout of several lots on the westerly side of
Chiltern Hill Drive Extension and "asked that the plan be
approved on the grounds that 'Subdivisional approval was
not required.'" The application was denied and Lavallee
appealed to the Superior Court seeking a decree in confor-
mance with his request to the board. "The Court dismissed
the appeal on January 7, 1955."

"On June 4, 1956, Lavallee and other parties in interest
proceeded to define the lay-out of Chiltern Hill Drive and
Aylesbury Road Extensions in accordance with the intent
expressed in the Lavallee — Brunell deed." A survey was

made by Francis B. Thompson, C. E., which defined the layouts of the street extensions by metes and bounds. An agreement based on this survey was "executed by all of the parties in interest with the exception of the People's Savings Bank who had a mortgage interest in the Gallo lot." This agreement satisfied the provision in the Lavallee — Brunell deed "which provided that the final lines would be defined by a survey by Francis B. Thompson, C. E."

After Lavallee's appeal was dismissed by the Superior Court, he deeded the balance of his property at the "dead end" of Chiltern Hill Drive Extension to the S. H. S. Corporation which subsequently conveyed it to the defendant Gallo Realty Co., Inc. Thereafter, all rights "to obtain sub-division approval for the extension of Chiltern Hill Drive passed to the Gallo family, who now owned the entire fee."

At the time of the original deed to Brunell in June, 1944, Lavallee intended "to create a right of way for all proper street purposes, including sewer, water and drains and in short, a use no different in kind or character than the use to which the public way of Chiltern Hill Drive itself was subject and had been used." This intent seems to have been re-affirmed when Lavallee "joined in the agreement . . . in June of 1956 defining the lines of Chiltern Hill Drive Extension" and fulfilled "one of the terms of the original grant of the right of way."

The judge ruled that "[it] would be inequitable to permit the easement created by Lavallee in the Brunell deed to lapse because of his inaction or stubbornness in failing to comply with the then existing regulations controlling subdivisions." Moreover, to allow the "extinguishment of the right of way would frustrate and impede the natural and orderly development of a large area of land lying to the north of Chiltern Hill Drive Extension."

The defendants argue that in the 1944 deed it was Lavallee's intention "to establish an approved subdivision street . . . [and that] [h]e did not have in mind the creation of a common law right of way over a portion of his remaining

land." They argue that the specific language of the deed indicated that the right of way was to be conditioned upon the planning board's approval of Lavallee's subdivision plan for Chiltern Hill Drive Extension and that an interpretation of this language which would result in the grant of the right of way even though the board failed to give *final* approval was erroneous. It is their contention that "failing . . . board approval," the grant of the right of way never took effect. We do not agree.

If Lavallee intended to condition the fifty foot right of way over the Chiltern Hill Drive Extension upon the board's approval of his proposed subdivision we are unable to glean this intent from the language of the deed. We conclude that the conveyance of Lot #5 to Brunell contained an unconditional grant of a fifty foot right of way over the Chiltern Hill Drive Extension. The grant was in no way made conditional by the fact that Lavallee provided for the contingency that the board might slightly alter the final lines of Lot #5 during the process of approving a future subdivision plan. Moreover, even if there is doubt as to Lavallee's intent as expressed, it is well settled that any uncertainty in the construction of a deed is to be construed against the grantor and in favor of the grantee. *Ammidown* v. *Granite Bank,* 8 Allen, 285, 290. *Webber* v. *Cox,* 256 Mass. 595, 598. *O'Shea* v. *Mark E. Kelly Co.* 273 Mass. 164, 171. The judge ruled that the granting of the right of way was conditional and that the conditions were fulfilled. However, we are of opinion that since the grant was an unconditional one the same result as the judge reached is required, and "hence the decree need not be disturbed." *Quirk* v. *Smith,* 268 Mass. 536, 544.

In view of our determination that an unconditional right of way was granted we need not treat with the defendants' other contentions.

*Decree affirmed with costs*
*of appeal.*