Sandino Smigliani *vs.* Lorraine E. Smigliani & others.

Essex.   May 7, 1970. — July 2, 1970.

Present: Wilkins, C.J., Cutter, Kirk, Spiegel, & Quirico, JJ.

*Deed*, Grantee, Alteration.   *Real Property*, Tenancy by the entirety, What constitutes conveyance.   *Trust*, Resulting trust.   *Equity Pleading and Practice*, Master: findings.

A master, to whom was referred a suit in equity under the usual rule, was authorized to make "general findings of mixed law and fact." [86–87]

Subsidiary findings by a master in a suit in equity, in substance that the plaintiff and his wife entered into a written agreement to purchase certain nightclub property, for which the plaintiff furnished the entire consideration, and that the deed, when delivered at the completion of the transaction, named as grantees the plaintiff and his wife, "Husband and Wife, as Tenants by the Entirety," warranted a conclusion that the plaintiff and his wife intended to hold the property as tenants by the entirety, although for reasons of the plaintiff a corporation was organized to hold title to the property and the names of the plaintiff and his wife as grantees were erased from the deed and the name of the corporation substituted as grantee before the deed was recorded. [89]

A deed of certain real estate naming as grantees a husband and wife as tenants by the entirety became effective when the purchase price was paid and the deed delivered, and a subsequent erasure of their names as grantees and substitution of a corporation as grantee before the deed was recorded did not create a resulting trust in the property for the benefit of the husband and wife. [90]

A deed naming a corporation as grantee was ineffective as a conveyance to it and conveyed no title to it where it appeared that the deed when delivered had named as grantees a husband and wife as tenants by the entirety and that before the deed was recorded the names of the husband and his wife had been erased and the name of the corporation substituted; and the husband retained his undivided interest in the property notwithstanding the recording of the deed and a subsequent deed from the corporation to his wife only. [90–91]

BILL IN EQUITY filed in the Superior Court on February 2, 1967.

The suit was heard on a master's report by *Good*, J.

*James C. Gahan, Jr.* (*Joseph F. Lyons* with him) for the defendants.

*Nicholas J. Decoulos* (*John T. Oleks, Jr.*, with him) for the plaintiff.

SPIEGEL, J. The plaintiff brought this bill in equity in the Superior Court seeking to enjoin his wife Lorraine E. Smigliani and her son by a former marriage, Ronald M. Perry (hereinafter referred to as defendants),[1] from "transferring, assigning, selling, encumbering . . . or otherwise disposing of the land and buildings off Lafayette Road in Salisbury, Massachusetts [known as Club Shannon, Inc. and Shannon Realty, Inc.], and . . . 100 shares of common stock," of the corporations; and, inter alia, to order Lorraine "to reconvey the land and buildings to the plaintiff" and the defendants to "transfer their entire interest as stockholders of Shannon Realty, Inc. to the plaintiff." The suit was referred to a master. He made extensive subsidiary findings from which he concluded: (1) that the plaintiff intended to make a gift to his wife of an undivided interest, "to be held by her together with . . . [him] as co-tenants by the entirety," but without "any change of intention" by the plaintiff as to the relative interests of the parties; the property was held by a corporation, Shannon Realty, Inc., and the stock of that corporation was held by Perry in trust for the plaintiff and his wife as tenants by the entirety; (2) that although the plaintiff indorsed the stock certificate to his wife on December 5, 1965, "there was no change of intention on the part of the plaintiff"; and his wife held the real estate[2] "impressed with the trust" which "is for the benefit of the husband and wife as tenants by the entirety"; (3) that the plaintiff furnished the entire considera-

---

[1] There was a third defendant, one Doris E. Hodge. She was the clerk and a director of Club Shannon, Inc. She did not hold any shares of stock in the corporation and is not involved in the issues before us.

[2] Shannon Realty, Inc., by deed dated November 16, 1966, and duly recorded, conveyed the real estate to the wife.

tion of $35,000 to acquire "the real estate and the nightclub business possessing an alcoholic beverage license"; and that the same trust impressed on the titleholder of the real estate and the 100 per cent stockholder of Shannon Realty, Inc. is also applicable to Club Shannon, Inc. and the fulfillment of this trust could be attained by the resignations of the present officers, directors and manager of Club Shannon, Inc.; (4) that the defendants could not rely on the plaintiff's attempts to defraud his creditors and that his wife was not defrauded since she "participated fully with the plaintiff in all the acts which resulted both in the placing of title in the corporation, Shannon Realty, Inc." and in the substituting of the officers and manager in the club corporation, both of which corporations were in her full control; (5) no evidence was offered as to the elements involved in an accounting or with regard to the determination of damages; and (6) that the plaintiff's delivery of $1,700 in cash to his wife while seated in a car in Peabody during December, 1966, was not "a loan which the wife agreed to repay." The defendants filed exceptions to several of the master's subsidiary findings and ultimate conclusions and filed a motion to recommit, the denial of which we treat as an interlocutory decree. The judge entered an interlocutory decree overruling the exceptions and confirming the master's report. A final decree was entered ordering Lorraine to convey "a good and clear record and marketable title" of the land and buildings off Lafayette Road, "to the plaintiff and herself . . . as tenants by the entirety"; to "execute and deliver to the plaintiff and herself a power of attorney" authorizing transfer of the common stock to the plaintiff and herself as tenants by the entirety; and to "make an accounting to the plaintiff of the receipts and disbursements of Club Shannon, Inc."[3] The defendants appeal from the interlocutory and final decrees.

1. The defendants first contend that the "master's report . . . does not conform to the standards set forth in

---

[3] The decree also ordered Perry and Hodge to resign as officers and directors of Shannon Realty, Inc. and Club Shannon, Inc.

the decisions" of this court. They argue, in effect, that the reference[4] in this case did not authorize the master to make "general findings of mixed law and fact." We do not agree. These determinations are well within the master's authority. In the case of *Sprague* v. *Rust Master Chem. Corp.* 320 Mass. 668, 677, where the reference to the master was virtually identical to the reference in the case at bar, we stated that the master is "limited to rulings that were involved in hearing the evidence and in deciding the facts, including those that were mixed questions of law and fact." Moreover, even if the master made pure rulings of law, those rulings must be disregarded. *Sprague* v. *Rust Master Chem. Corp.,* supra. This, however, would not affect a decree based on the facts found by the master.

The defendants also argue that the result reached by the master "was not in issue before him on the basis of the . . . [plaintiff's] sworn allegations and the . . . [defendants'] answer." Although it is difficult to ascertain the specific issue to which the defendants' contention is directed, we nevertheless have reviewed the plaintiff's entire bill and are satisfied that the master did not make findings beyond the scope of the allegations contained therein. *North Easton Co-op. Bank* vs. *MacLean,* 300 Mass. 285, 295.

2. We discern no basis for the defendants' claim that the "master's finding that the intent of the . . . [plaintiff] and his wife was the acquisition of . . . real estate, stock ownership and liquor business to be held by the husband and wife as tenants by the entirety . . . was in error because it is not warranted or supported by the subsidiary facts set forth in the report."

We summarize the master's subsidiary findings regarding this point. In June of 1965, about a year after the plaintiff and his wife Lorraine were married, the plaintiff became interested in purchasing a nightclub. "By written agree-

---

[4] The reference in this case directed the master "to hear the parties, examine their vouchers and evidence . . . , find the subsidiary facts on each issue tried and report them and his general findings based on such subsidiary findings to the court, together with such questions of law arising in the course of his duty as any party may request."

ment dated June 21, 1965, the plaintiff and his wife . . .
agreed to purchase for $35,000, the land and buildings oc-
cupied by Club Shannon, Inc., together with all the personal
property therein, and together with 'all rights and alcoholic
beverage license.'" The plaintiff gave a deposit of $5,000
and subsequently "obtained for cash two checks, totalling
$30,000" which he gave to the sellers. These payments were
"made up entirely of the plaintiff's personal funds."

On July 14, 1965, the purchase of Club Shannon was com-
pleted at the office of the plaintiff's attorney who also repre-
sented the sellers. The required authorization from the
licensing authorities, including the approval of the new
officers and manager, had previously been obtained. "The
manager so approved was Lorraine, and the directors were
Lorraine and her son Ronald . . . and the attorney's secre-
tary, Doris E. Hodge. The reason for omitting the name of
the plaintiff as an officer of the club was a record of a
criminal conviction against the plaintiff."

The deed when "delivered at the completion of the trans-
action on July 14, 1965, named as grantees 'Sandino
Smigliani and Lorraine E. Smigliani, Husband and Wife,
as Tenants by the Entirety.' Although later, before record-
ing of the deed, erasures were made and another name [was]
substituted as grantee, the names and terminology con-
tained . . . [in the deed delivered July 14, 1965, were]
clearly visible to the naked eye in the original deed received
in evidence." The change of the grantee occurred because
the plaintiff had been involved in an automobile accident
causing serious personal injuries. A real estate attachment
related to that accident was made against the plaintiff on
July 14, 1965, with subsequent service of process. On
July 21, 1965, Shannon Realty, Inc. was organized, "the
incorporators being Ronald M. Perry, Lorraine E. Smigliani
and Doris E. Hodge." The total stock authorized and
issued, 100 shares, was "stated to be subscribed for by
Ronald M. Perry, to be paid for in cash, in full. . . ." On
July 28, 1965, the same deed dated July 13, 1965, but with
the typewritten names of the originally named grantees

erased and replaced by the name " 'Shannon Realty, Inc.' as grantee, was recorded with Essex South District Registry of Deeds." The total consideration for the "purchase . . . [and] organization of the corporation was paid by . . . the plaintiff. Nevertheless, as is indicated by the records of the Secretary of the Commonwealth . . . the certificate for 100 shares [the total stock authorized and issued] was issued in the name of Ronald M. Perry," the twenty-one year old son of Lorraine.

From these subsidiary findings and "reasonable inferences . . . drawn therefrom" the master concluded that it was the intent of both the plaintiff and his wife Lorraine, to acquire "as one entire transaction . . . the real estate and the business connected therewith" and that this property was "to be held by the husband and wife as tenants by the entirety." He also concluded that the "sole motivation for the organization of Shannon Realty, Inc. and the substitution of the corporation as the named grantee in the deed before its recording" was the suit against the plaintiff and the real estate attachment made relative thereto; and that the plaintiff had "no intent to make a gift of any interest in the purchased property to Shannon Realty, Inc.; nor . . . to Ronald M. Perry; nor . . . to his wife Lorraine E. Smigliani other or greater than the interest as co-tenant by the entirety theretofore evidenced by the deed in the form in which it had been delivered."

The defendants appear to base much of their argument on this issue on assumptions and not from evidence in the record. As the evidence is not reported, the facts found by the master must stand unless on their face they are inconsistent, contradictory or plainly wrong. *Turgeon* v. *Turgeon*, 330 Mass. 402, 409. We are satisfied that the subsidiary facts found by the master amply justify the conclusion that the plaintiff and his wife intended to hold the property as tenants by the entirety. See *McPherson* v. *McPherson*, 337 Mass. 611, 614.

3. The defendants also contend that there were no subsidiary findings of fact from which the master could con-

clude that a resulting trust arose coincident to the transfer of the property to the corporation.

After payment of the purchase price the plaintiff and his wife took title to the property as tenants by the entirety. This deed became effective at the time of delivery. *Harrison* v. *Trustees of Phillips Academy,* 12 Mass. 456, 460. The subsequent purported transfer of the property to the corporation did not create a resulting trust. It is well established that a "resulting trust must arise at the time of the purchase, and cannot be created afterwards." *Quinn* v. *Quinn,* 260 Mass. 494, 503, and cases cited. *Kennedy* v. *Innis,* 339 Mass. 195, 200. Scott, Trusts (3d ed.) § 440. This rule, however, does not dispose of the case before us.

Although none of the parties argued the point which we are about to discuss, the legal principle on which we base our decision is well settled. As heretofore noted, when the deed was delivered the plaintiff and his wife were named therein as grantees. Before the instrument was recorded the names of the plaintiff and his wife were erased and the name of the corporation substituted. Further, there is no evidence that the substitution of the grantee was made in the presence or with the authority of the grantors. See *Macurda* v. *Fuller,* 225 Mass. 341, 344–345; *Bretta* v. *Meltzer,* 280 Mass. 573, 575–576; *Zembruski* v. *Alicki,* 315 Mass. 299, 300–301; *Flavin* v. *Morrissey,* 327 Mass. 217, 218–219. In the case of *Carr* v. *Frye,* 225 Mass. 531, where the grantee of land, having received a completed deed in his name, caused his name to be erased as grantee and that of his wife substituted therefor before the deed was recorded, this court stated, "The erasure of his name and the insertion of the name of . . . [his wife] did not divest him of his estate nor transfer it to her. It was his property and remained so, although the record title was in her name. . . . 'When a person has become the legal owner of real estate, he cannot transfer it or part with his title, except in some of the forms prescribed by law. The grantee may destroy his deed, but not his estate.'" *Id.* at 532–533. Likewise, in the instant case, the altered instrument was ineffective as a conveyance

to the corporation. It conveyed no title. Therefore the plaintiff has continued to retain his undivided interest in the property.

In view of our conclusion that no valid transfer of the property occurred there is no need for us to treat with the other issues raised by the defendants.

Clearly our holding leads to the same result reached by the master and the judge regarding title to the property, and those portions of the decree relating thereto "need not be disturbed." See *E. Whitehead, Inc.* v. *Gallo,* 357 Mass. 215, 219.

The master's report shows that "no evidence was offered as to any elements which might be involved in an accounting or in a determination of damages." Therefore, the final decree is to be modified by striking therefrom paragraph 5,[5] and, as so modified, is affirmed. The interlocutory decrees are affirmed. The plaintiff is to have costs of appeal.

*So ordered.*

---

[5] Paragraph 5 of the decree states: "That the defendant Lorraine E. Smigliani make an accounting to the plaintiff of the receipts and disbursements of Club Shannon, Inc. in accordance with generally accepted accounting principles."