P. J. RILEY AND COMPANY *vs.* ABERTHAW CONSTRUCTION
Co. & another.[1]

Suffolk.    November 14, 1974. — May 20, 1975.

Present: HALE, C.J., ROSE, KEVILLE, GRANT, & ARMSTRONG, JJ.

*Contract,* Performance and breach, Building contract. *Evidence,* Presumptions and burden of proof. *Damages,* For breach of contract.

In a suit to collect a balance alleged to be due under a contract for delivery by the plaintiff of two oil storage tanks which the defendant claimed were defective as justification for withholding a portion of the contract price, the burden was at all times on the plaintiff to prove that the tanks it supplied met the contract specifications. [277]

Even if it were found that peeling and cracking of the coating on oil storage tanks delivered by the plaintiff to the defendant was attributable to the plaintiff rather than to the defendant's handling of the tanks after delivery, the defendant would not be entitled to withhold from the contract price the cost of removing backfill installed around the tanks in order to have them recoated where it appeared that the peeling and cracking of the coating was apparent when the defendant put in the backfill. [277-278]

BILL IN EQUITY filed in the Superior Court on January 4, 1967.

The suit was heard by *Nelson, J.,* on a master's report.

*Douglas G. Moxham* for the defendants.

*Francis E. Dooley, Jr.,* for the plaintiff.

ARMSTRONG, J.    The plaintiff brought this suit under G. L. c. 149, § 29, to collect a balance alleged to be due under a subcontract with the defendant Aberthaw Construction Co. (Aberthaw), the general contractor for the construction of a power plant for the Commonwealth of Massachusetts. The subcontract called in part for the plain-

---

[1] Pennsylvania Insurance Company, which was surety on the defendant Aberthaw's bond required under G. L. c. 149, § 29. The Commonwealth of Massachusetts was originally named as a party defendant, but the suit was dismissed as to it.

tiff to supply two 40,100-gallon oil storage tanks with "a primer coat and a finish coat of Bitumastic 70-B. . . ." A master found that when the tanks were delivered on January 13, 1965, abrasions to the bitumastic coating on one of the tanks, apparently caused in delivery, were noted, as well as some cracking and peeling (of unspecified extent); that the areas of abrasion were patched on January 15 and did not crack or peel thereafter; that on January 19 Aberthaw filled each tank with 24,000 gallons of oil over the objections of the plaintiff's engineer, who urged that backfill first be installed around the tanks; that between January 19 and February 19, when the backfill was partially put in place, cracks and peeling developed in the bitumastic coating, and pieces of the coating came off entirely; and that during that entire period and thereafter into March, the tanks, being under Aberthaw's control, were subjected to the elements and were walked upon by workmen. Aberthaw demanded that the plaintiff dig out the backfill, remove the old coat of bitumastic, and replace it with a new coat. The plaintiff refused. Aberthaw then engaged another to do that work at a cost of $8,563.10, and "backcharged" the plaintiff, paying the plaintiff the contract price less $8,563.10. The master did not make a finding as to the cause of the cracking and peeling. He stated that the burden of proving the cause of the cracking and peeling was upon Aberthaw, inasmuch as the latter must justify its "backcharge," and that that burden had not been sustained. He made a general finding that the plaintiff completed its contract with Aberthaw in accordance with all pertinent specifications[2], and found for the plaintiff in the sum of $8,563.10, plus interest.

Aberthaw filed objections to the ruling on the burden of proof and to the general finding that the plaintiff had completed its performance under the subcontract, and

---

[2] The general finding cannot fairly be taken to import a more specific finding that the cause of the cracking and peeling was Aberthaw's improper treatment of the tanks after delivery, rather than the plaintiff's unworkmanlike application of the bitumastic coating to the metal. *Gillis* v. *Cobe,* 177 Mass. 584, 591-592 (1901).

moved to recommit for the purpose of making such findings as would be required for decision if the master's ruling as to burden of proof was, as Aberthaw contended, incorrect. The motion was denied; the report was confirmed. The case is here on the defendants' appeal from a final decree awarding the plaintiff $8,563.10, with interest.

If the master's statement concerning the burden of proof is taken as an assertion that no evidence warranted a finding that the plaintiff failed to perform its contractual obligations fully, the statement was inconsistent with his finding that the bitumastic coating (which was intended, according to his findings, to protect the metal surfaces of the tanks from the elements and water) cracked and peeled within five or six weeks of delivery. That finding warranted an inference of unworkmanlike fabrication. If, on the other hand, the master's statement is taken as an assertion that all the evidence was in equipoise and that he was left in doubt whether the cause of the cracking and peeling was improper fabrication by the plaintiff or improper treatment by Aberthaw after delivery, he allocated the burden incorrectly. The burden was at all times on the plaintiff to prove that the tanks it supplied met the contract specifications. *Powers* v. *Russell,* 13 Pick. 69, 76-77 (1833). *Perley* v. *Perley,* 144 Mass. 104, 107-108 (1887). *Sayles* v. *Quinn,* 196 Mass. 492, 496 (1907). *Waldo Bros. Co.* v. *Platt Contr. Co. Inc.* 305 Mass. 349, 359 (1940). Even assuming, as the plaintiff argues, that Aberthaw's "backcharge" constituted a recoupment claim (this may be doubted: see *Beverly Hosp.* v. *Early,* 292 Mass. 201, 204 [1935], and *Zani* v. *Garrison Hall Inc.* 300 Mass. 128, 129 [1938]), as to which Aberthaw had the burden of proof, nevertheless the plaintiff's claim for payment under the contract cast upon it the burden of establishing the positive of the same proposition that Aberthaw's claim depended on negating: namely, the plaintiff's workmanlike fabrication. The defendant's claim did not shift the burden on the plaintiff's claim away from the plaintiff. *Perley* v. *Perley, supra.*

As the case was decided upon an erroneous view of the law, the final decree must be reversed and the case re-

manded for findings on the cause of the cracking and peeling. Even if the cause of the cracking and peeling is resolved against the plaintiff, further findings may nevertheless be required to decide the case, for the plaintiff might still recover on the basis of quantum meruit if its performance should be determined to be substantial in relation to the entire contract and its breach unintentional. *Hayes Pump & Mach. Co.* v. *Pitman & Brown Co.* 331 Mass. 240, 242-243 (1954). Contrast *Keene* v. *Gould, post,* 731 (1975), and cases cited. In that event, findings would also be required on the measure of damages, for Aberthaw cannot charge the plaintiff with the expense of digging out the backfill in the face of the master's finding that the defective condition of the coating was obvious at the time Aberthaw put in the backfill. *Day* v. *Mapes-Reeve Constr. Co.* 174 Mass. 412, 415-416 (1899). *Gascoigne* v. *Cary Brick Co.* 217 Mass. 302, 305 (1914). Restatement: Contracts, § 336 (1) (1932). The measure of the deduction would instead be the cost of removing the old and applying the new bitumastic coating. See *Ficara* v. *Belleau,* 331 Mass. 80, 82-83 (1954); *Dimare* v. *Capaldi,* 336 Mass. 497, 501-502 (1957); and *Louise Caroline Nursing Home, Inc.* v. *Dix Constr. Corp.* 362 Mass. 306, 310 (1972).

The interlocutory decree confirming the report[3] and the final decree are reversed; the case is remanded for further proceedings not inconsistent with this opinion.

*So ordered.*

---

[3] See *Mackey* v. *Rootes Motors Inc.* 348 Mass. 464, 469 (1965).