**In re SNIDER BROS., INC., Acme Boneless Beef Co., Inc., Portion Control Meat Processing Co., Inc., Quik 'N'. Ezy Meat Products, Inc., Snider Food & Storage, Inc., and Sutton Leasing Corporation, Debtors.**

**Bankruptcy Nos. 4–80–00587–G to 4–80–00592–G.**

United States Bankruptcy Court, D. Massachusetts.

June 23, 1981.

James F. Queenan, Jr., Worcester, Mass., for debtors.

Mark N. Berman, Boston, Mass., for Creditors' Committee.

Sumner Silver, Worcester, Mass., for Commerce Bank & Trust Co.

## MEMORANDUM AND ORDER CONCERNING APPLICATION TO PAY DEFERRED COMPENSATION BENEFIT

PAUL W. GLENNON, Bankruptcy Judge.

The application of the debtors, currently operating as debtors-in-possession, to pay the claim of Morris H. Abramoff pursuant to a deferred compensation agreement made by debtor Corporation, Acme Boneless Beef Co., Inc., and guaranteed by Portion Control Meat Processing Co., Inc., and Snider Bros., Inc., was heard along with objections to the claim at a show cause hearing on January 30, 1981.

### FACTS

Morris Abramoff ("Abramoff") worked for Acme Boneless Beef Co., Inc. (the "company") for over 30 years. Because of Abramoff's long service to the company, and to continue to secure his services, a private deferred compensation plan was arranged on December 28, 1970. The parties to the deferred compensation agreement were Acme Boneless Beef Co., Inc., the Com-

merce Bank and Trust Co., as trustee and Abramoff. Snider Brothers, Inc. and Portion Control Meat Processing Co., Inc. also signed agreements with Abramoff to guaranty the compensation plan.

The written agreement required that the company turn over New York Life Insurance Policies numbered 31880 846 and 32418 346, as the corpus of a trust to be held by the Commerce Bank and Trust Co. as trustee. The policies named Abramoff as the insured and his wife and children as beneficiaries. Inadvertently, these policies were not transferred to the trustee; and during the intervening years, the company borrowed substantially on the policies.

Cash benefits to Abramoff were to vest upon retirement at age 65, total disability, or with an involuntary termination of employment. As consideration for the deferred compensation plan, Abramoff signed a restrictive covenant not to compete, and agreed to accept a lower current rate of pay. When the company ceased operation on November 15, 1980, Abramoff's employment was involuntarily terminated, and he applied for his benefits. Abramoff is in his middle sixties.

Abramoff's expected compensation under the plan was a settlement of $25,000 or an annual payment of $5,000 until the cash value of the policies was exhausted. In fact, the current proceeds of the policies total $8,132.07. They are identified as net proceeds of $3,963.32 of New York Life Insurance policy # 31880 846 and $4,168.65 of New York Life Insurance policy # 32418 346. The Commerce Bank and Trust Co. holds these cash proceeds after payment of the outstanding loans on the policies.

## DISCUSSION

The objectors to the claim for payment to Abramoff describe his status as a creditor. Abramoff alleges he is the beneficiary of a trust arrangement. The debtors concede that they intended to create a trust for Mr. Abramoff, and were careless in the handling of the policies which would have formed the corpus of the trust arrangement. In a Chapter 11 reorganization or a Chapter 7 liquidation under the Bankruptcy Code, the debtor's estate consists of all legal or equitable interests of the debtor in the property as of the commencement of the case [11 U.S.C. § 541]. But if the debtor holds only a bare legal title without a beneficial interest or holds the property in trust for another, only those rights which the debtor would have otherwise had emanating from such interest pass to the estate under § 541. *In re Wyatt,* 6 B.R. 947 (Bkrtcy.E.D.N.Y.1980); *Selby v. Ford Motor Co.,* 590 F.2d 642 (6th Cir. 1979). Allowance of Abramoff's claim must be determined by his status. If he is the beneficiary of a trust the claim is allowable, if he is a general creditor, it is not.

A Bankruptcy Court has great equitable powers. [11 U.S.C. § 105 and 18 U.S.C. § 1481]. It can allow or disallow claims, collect and distribute estates of bankrupts, determine controversies in relation to the estates. It can reject in whole or in part claims depending on the equities of the case, and it can enter such judgments as are necessary to enforce the Bankruptcy Code. See *Pepper v. Litton,* 308 U.S. 295, 308, 60 S.Ct. 238, 246, 84 L.Ed. 281 (1939). If Abramoff has rights as a beneficiary of a trust, these property rights are to be determined by state law prior to the bankruptcy or reorganization proceedings. *In re Tate-Jones Co.,* 85 F.Supp. 971 (W.D.Pa.1949).

■ The written trust agreement fails because it was not completed. No transfer of legal title was made to the trustee, nor did the settlor relinquish control of the property. *Silbert v. The Equitable Life Assurance Society of America,* 314 Mass. 406, 50 N.E.2d 57 (1943); *Loring v. Hildreth,* 170 Mass. 328, 49 N.E. 652 (1898). But Massachusetts case law recognizes both resulting trusts and oral trust agreements for personal property.

■ In the case before the court, there is a question of the creation of an oral express trust. Massachusetts law will enforce oral express trusts for personal property. *Massachusetts General Laws* C. 203 § 1. The requirements to create an oral

trust are the intention of the settlor to create a trust, and notice to the beneficiary with actual or implied acceptance by him. *Cooney v. Montana*, 347 Mass. 29, 196 N.E.2d 202 (1963); *Mikshis v. Palionis*, 345 Mass. 316, 187 N.E.2d 147 (1963); and, *Greeley v. Flynn*, 310 Mass. 23, 36 N.E.2d 394 (1941). The donor acting as trustee in a voluntary trust can retain use, possession, and control of the trust property without affecting the validity of the purpose of the trust. *Cohen v. Newton Savings Bank*, 320 Mass. 90, 67 N.E.2d 748 (1946).

The agreements made between the company and Abramoff prior to the signing of the written agreements, could qualify as creating an oral express trust. The company expressed an intention to create a deferred compensation plan, notified Abramoff, and he accepted. But, Abramoff gave consideration for the creation of the deferred compensation plan in the form of decreased current income, and in a covenant not to compete. These factors influence the court more toward the equitable remedy of a resulting trust rather than an oral express trust agreement.

■ Abramoff provided valuable consideration for the conveyance of the trust res (insurance policies) to the trustee in the form of a restrictive covenant not to compete. See *Peairs*, 13A M.P.S. *Business Corporations* § 588 (2d ed. 1971, 1979 supp.). Equity will support a resulting trust when the settlor has received valuable consideration, and where the express trust has failed for some reason. 76 *Am.Jur.*2d; Trusts §§ 197, 199 (1975).

■ Under Massachusetts case law, to establish a resulting trust there must be evidence of intent to separate beneficial and legal ownership of the property by words or by the circumstances of the transaction. The party asserting the beneficial interest must show the entire consideration or a specifically identifiable part of the consideration to acquire the property. *Smigliani v. Smigliani*, 358 Mass. 84, 260 N.E.2d 917 (1970); *Frank v. Frank*, 340 Mass. 132, 162 N.E.2d 781 (1959); *Moat v. Moat*, 301 Mass. 469, 17 N.E.2d 710 (1938); and *Brow-*

*dy v. Browdy*, 250 Mass. 515, 145 N.E. 868 (1925). Mr. Abramoff furnished consideration in the form of the restrictive covenant; furthermore, he abided by the terms of the covenant for as long as it was possible for him to do so. To ignore the value of his promise and execution upon that promise would be an unjust enrichment to the debtors' estate. The debtors in exchange agreed to convey the life insurance policies to the bank in trust for Abramoff. The need for the equitable remedy of a resulting trust would not be necessary if the debtors had acted promptly and conscientiously to transfer the property to the Commerce Bank and Trust Co. to complete the intended trust. The court holds that a resulting trust in Abramoff's favor has existed since the time of the execution of the written agreement in 1970. The company has held the insurance policies as trustee for Abramoff's beneficial interest.

Bankruptcy courts have recognized that assets held in trust by a debtor as a trustee at the time of a bankruptcy proceeding belong to the trust and not to the debtor's estate. *Bank of Marin v. England*, 385 U.S. 99, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966); *In re Wyatt*, 6 B.R. 947 (Bkrtcy.E.D.N.Y.1980); *In re D & B Electric, Inc.*, 4 B.R. 263 (Bkrtcy.W.D.Ky.1980); *Selby v. Ford Motor Co.*, 590 F.2d 642 (6th Cir. 1979). For a beneficiary to be able to acquire the funds in question, he must be able to trace and identify them. *Schuyler v. Littlefield*, 232 U.S. 707, 34 S.Ct. 466, 58 L.Ed. 806 (1914); *Elliott v. Bumb*, 356 F.2d 749 (9th Cir. 1966); *In re Ballard*, 279 F. 574 (N.D.Tex. 1922); *In re Tate-Jones & Co.*, 85 F.Supp. 971 (W.D.Pa.1949).

Abramoff can point to two checks specifically identified as cash proceeds of the life insurance policies in question. The checks are being held at the Commerce Bank and Trust. Where a beneficiary can point to specific trust property being held by a trustee or debtors-in-possession, he has a right to claim the property as his own and to withdraw it from the reorganization proceedings free from conditions that may be imposed upon the general or unsecured

creditors. *In re Tate-Jones & Co., supra.* Morris H. Abramoff as beneficiary of the resulting trust in the insurance policies and their identified proceeds has the right to be paid the proceeds of the policies.