CAROLYN LIMA *vs.* RICHARD LIMA.

No. 89-P-46.

Plymouth. April 3, 1990. - April 24, 1991.

Present: ARMSTRONG, PERRETTA, & DREBEN, JJ.

*Deed,* Conveyance between spouses, Alteration. *Real Property,* Deed, Easement, Tenancy in common. *Easement. Husband and Wife,* Conveyance between spouses. *Contract,* Specific performance. *Frauds, Statute of. Jurisdiction,* Specific performance, Equitable.

In an action seeking specific performance of an oral agreement between the plaintiff and her former husband that she would transfer her interest in certain real property to him in return for his transfer to her of his interest in certain other property, enforcement of the agreement was not barred by the Statute of Frauds where the wife had performed her part, or by the "clean hands" doctrine where no harm was shown by the wife's alleged unlawful acts; nor was there an adequate remedy at law that would require the denial of specific performance. [485-486]

In an action seeking specific performance of an agreement to convey certain real property, the judge did not err in refusing to order a conveyance to the plaintiff of more than she had proved was the subject of the agreement. [486-487]

Where a grantee, without authority to do so, materially altered the deeds to certain real property before recording them, the grantee's action had the effect of invalidating the deeds themselves, but not conveyances that they represented; in a proceeding for equitable relief, the grantor was entitled to a judgment declaring the invalidity of the recorded deeds and providing for execution and delivery of substitute deeds. [487-488]

In an action seeking specific performance of an agreement to convey certain real property, the judge, as an equitable condition on granting relief, acted within his discretion in confining the scope of a reserved easement to conform to the interest described in a party's offer of proof. [488-489] DREBEN, J., concurring.

CIVIL ACTION commenced in the Plymouth Division of the Probate and Family Court Department on December 3, 1984.

The case was heard by *James R. Lawton,* J.

*Douglas A. Hale* for Richard Lima.

*Margaret A. Ishihara* for Carolyn Lima.

ARMSTRONG, J. On September 23, 1976, while the parties' divorce action was pending, the plaintiff (wife) voluntarily transferred to the defendant (husband) her interest in a commercial property so that he might sell the business to another. It was understood at the time that the husband, in return, would transfer his interest in the parties' beachfront home in Mattapoisett to the wife. The divorce judgment was entered December 20, 1978, making provision for custody and child support but not for equitable division of the parties' assets. Under date of May 17, 1979, the husband executed a deed of his interest in the beachfront residence to the wife, reserving to himself an easement of passage to the beach for recreational activities, including a right to park in the driveway. The deed was recorded June 1, 1979, the wife's then attorney first having crossed out the language reserving the easement without informing the husband or his counsel.

The parties' residential property consisted of four contiguous parcels. When the wife's attorney prepared the 1979 deed (the husband had interlineated the easement language before executing it), he had by inadvertence failed to include three of the four parcels. The error was discovered in 1983, and the wife, by then having retained new counsel, forwarded to the husband or his attorney (also new), for execution, a deed conveying the other three parcels. (It was then that the husband learned of the 1979 deletion.) The husband's attorney prepared a substitute deed, transferring the three parcels to the wife but reserving to the husband a right of way to the beach, for travel by vehicle or by foot, including the right to park vehicles and trailers. The husband executed the substitute deed on November 23, 1984, and forwarded it to the wife.

The wife then filed the present complaint, seeking specific performance of the parties' 1976 unwritten agreement. The husband's answer raised the Statute of Frauds, the statute of limitations, the clean hands doctrine, and the existence of an adequate remedy at law; and it disputed the terms of the unwritten agreement, the husband asserting that the beach

easement had been agreed from the outset. By later counter-claim the husband sought a declaration that the recorded deeds[1] were null and void and an order that the wife execute a deed (which, on the husband's theory of the case, would be confirmatory only) conveying the four parcels comprising the residential property to the husband and wife as tenants in common.

The testimony concerning the oral land swap understand-ing was to the following effect. The wife testified that the parties agreed in 1976 that she would convey her interest in the commercial property to the husband, and he would con-vey his interest in the residential property to her. The com-mercial property deed was prepared after a meeting in her former attorney's office, attended by the husband and his then attorney. No mention was made of the husband's re-serving an easement. This was confirmed by her attorney. A family friend who was present at discussions between the parties before the 1976 conveyance heard no mention of beach rights. The wife was asked if the subject of beach rights came up at a 1975 meeting between her and her hus-band at a Chinese restaurant, and, over the husband's objec-tion, she was allowed to answer negatively. She claimed that no mention was made of beach rights until 1979. The hus-band's version of the meeting at the office of the wife's for-mer attorney — a meeting he described as acrimonious — was as follows: It was agreed at that meeting that the ex-change would take place and that the attorneys would draw up the deeds, which the parties signed in blank. There was no discussion of the content of the deeds, but the contents had been discussed at other meetings before the divorce. When the blank deeds were signed, it was the husband's "in-tention and . . . understanding that [beach rights] would be

---

[1]By the time the counterclaim was filed, the wife had crossed out the easement language in the 1984 deed and recorded it. This time, however, the husband and his attorney were notified promptly of this action and the reason for it. The wife recorded simultaneously a revocable license permit-ting the husband to use the beach and put in escrow a grant to the hus-band of the easement he desired in the event the court should rule against her.

included in the language the attorneys placed on the deeds."
The judge sustained the wife's objection to the question
whether the husband had discussed beach rights with the
wife at the Chinese restaurant[2]; the husband's counsel made
an offer of proof to the effect that the husband would testify
that they had discussed a division of assets and that the hus-
band's position was that, "in essence, if he conveyed or gave
the house to her, he would have the right to use the beach
with Ethan [the parties' son], would be able to use the ga-
rage for his workshop at any time. That's the offer of proof."
The judge accepted the husband's version, finding that the
husband "had prior to March, 1977,[3] asked for beach rights
over the marital property" and that "[i]t was always [the
husband's] desire to reserve to himself rights to the
. . . beach . . . ." It is worth noting here that the evidence
probably did not warrant, and the judge seems not to have
made, a finding that the wife ever *agreed* to the husband's
reservation of a beach easement.

The judgment entered after trial took the form of an order
that the husband execute replacement deeds, conveying the
residential properties, and reserving to himself, for his life-
time only, a personal right of passage over the residential lot
to the beach and a right to use the beach in common with
the wife and any others who might be so entitled (that is to
say, an easement substantially narrower than that which the
husband reserved to himself in the 1979 and 1984 deeds).

The judge's ultimate findings leave somewhat unclear the
theory on which he based the judgment. After finding that

---

[2]The exclusion seems to have been based on the disqualification relative
to private communications between husband and wife. The ruling was er-
roneous; the disqualification does not apply in a "proceeding arising out of
or involving a contract made by a married woman with her husband." See
G. L. c. 233, § 20, as appearing in St. 1983, c. 145; *Hutchinson* v.
*Hutchinson,* 6 Mass. App. Ct. 705, 710 (1978); Liacos, Massachusetts Ev-
idence 181 (5th ed. 1981).

[3]The date of March, 1977, is not mentioned in the evidence; its source
may be the wife's complaint, which incorrectly stated the time of the wife's
September, 1976, conveyance (of the commercial property) as March,
1977. We assume the judge intended to refer to the date of that
conveyance.

the wife's alterations of the deeds "constituted fraud and deceit," the judge found that the husband and the wife had reached agreement on the mutual conveyances of their interests in the commercial and residential properties; that the "conveyances . . . were in substantial conformity with their personal agreements"; that a declaration voiding the residential property conveyances would be unjust to the wife, who had acquiesced in the deed alterations on bad advice from her counsel; and that the husband should have equitable relief to restore to him the easement he had reserved in the deeds.[4]

These findings, read together with the judgment, are, we think, susceptible of the interpretation that the parties had agreed on the main point, prior to the wife's 1976 conveyance of the commercial property, that the wife should have

---

[4]The critical findings are:

"17. The parties, Richard Lima and Carolyn Lima, had a meeting of the mind concerning the mutual conveyances of jointly held real estate in Mattapoisett and the execution of deeds to those two parcels of real estate in 1976 and 1979 as a means of disposing of their jointly held property and as a means of terminating their marital relationship.

"18. The sale of the commercial real estate owned by Richard Lima following a conveyance to him of the same by Carolyn Lima in 1976 makes it impossible for this or any other court to place the parties in the same position they were in prior to that conveyance. The grave inequity and injustice that would occur as the result of declaring the conveyances concerning the property at 3 Main Street, Mattapoisett void as the result of the deletion of language dealing with the easement to the Mattapoisett beach cannot be justified in view of the bad advice given to Carolyn Lima by [her attorneys].

"19. This court finds that the conveyances of the parcels of land in question were in substantial conformity with their personal agreements as manifested by the execution of deeds and the sale by Richard Lima of the real estate at 7 Pearl Street in Mattapoisett after it had been conveyed to him.

"20. The court finds that the deletion of the easement provisions in the deeds was substantial but not altogether material to the basic issues of ownership of the parcels of land in question and that equitable relief should be granted to Richard Lima in order to restore to him rights under an easement he believed he had obtained as the result of executing deeds to his former wife, Carolyn Lima."

in return the residence, that the parties had discussed the husband's desire to retain beach rights but may not have resolved the issue, that any failure to resolve it was not regarded by the parties in 1976 as so substantial a detail as to preclude going ahead with the wife's conveyance of the commercial property, and that the husband, when he included the easement language in the deeds executed after the divorce, may have enlarged its scope beyond what was reasonably contemplated in the 1975 and 1976 discussions. (This interpretation, which is reflective of the parties' testimony, would explain the judge's shrinking the scope of the easement to one more in keeping with the husband's offer of proof, which made no mention of vehicular access, parking rights, or hereditary rights.)

Both parties have appealed. The wife argues that she proved her entitlement to a conveyance of the residential properties free of the husband's desired easement. The husband argues that the judge erred as matter of law in refusing to declare the residential conveyances void; that the parties never had a meeting of the minds because they never reached agreement concerning the easement; and that, if the parties had reached an agreement, it would be unenforceable for want of a writing, unenforceable in equity because there are adequate remedies at law, and unenforceable by the wife under the clean hands doctrine.

1. *Specific performance.* It is obvious that the judge, armed with the broad discretion traditional to equity courts, attempted to do rough justice in a situation that called for a practical solution. To undo the possibly imperfect agreement of the parties would have been unjust to the wife, who had fully performed and who could not be restored to the status quo ante. It would similarly be unjust to permit the husband to enlarge his easement demands, after the wife had performed, to a degree that would substantially burden the value of the property the wife thought she was to receive, and it would be correspondingly unjust to the husband to strip him of the right to use the beach on which he (according to the judge's findings) at all times insisted. "It should

always be borne in mind that, in a suit for specific performance, it is the function of the court to do full and complete justice without requiring any additional and unnecessary litigation. The plaintiff is seeking a special remedy, and in seeking equity he must do equity. The mandatory decree may be directed against the plaintiff as well as against the defendant. It may be made conditional on some performance by the plaintiff, such as the rendering of an omitted performance, the making of compensation, or even the assenting to a modification of the terms of the contract to be enforced . . ." (footnotes omitted). 5A Corbin, Contracts § 1137, at 97-98 (1964).

Having in mind that the judgment works substantial justice to both parties, we consider successively the particular objections raised by the parties, confining our consideration to the points argued. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

2. *The husband's defenses.* Based on his findings, the judge correctly ruled that the Statute of Frauds (G. L. c. 259, § 1, Fourth) would not bar enforcement of a land swap agreement. The wife had performed her part of the alleged agreement by conveying her interest in the commercial property to the husband, and his subsequent conveyance of that property had made rescission impossible. See *Glass* v. *Hulbert*, 102 Mass. 24, 35-36 (1869); *Fisher* v. *MacDonald*, 332 Mass. 727, 729 (1955); *Fitzsimmons* v. *Kerrigan*, 9 Mass. App. Ct. 928 (1980). The defense of the statute of limitations, raised in the pleadings, has not been argued here and is deemed waived. The argument that specific performance should be denied because the wife had adequate remedies at law is predicated on two suggested remedies. The first, partition, is available only to one holding a present, possessory, undivided interest in land (see G. L. c. 241, § 1; *Devine* v. *Deckrow*, 299 Mass. 28, 33 [1937]; *Bernat* v. *Kivior*, 22 Mass. App. Ct. 957, 958 [1986]); but the wife and the husband are not now owners of undivided interests in the residential properties (see part 4, *infra*). The second suggested legal remedy is a claim for equitable division, G. L. c. 208,

§ 34. A proceeding for equitable division, however, if not itself "equitable" in nature, is not an adequate or complete remedy because the rights of the parties are determined by wholly different criteria from those applied in determining contract claims. See *Putnam* v. *Putnam*, 5 Mass. App. Ct. 10, 14-15 (1977). Contract rights between former spouses, like property rights, have not been displaced by equitable division. *Id.* at 15. The "clean hands" doctrine would not bar equitable relief; no harm is shown to have been done by the wife's (and her first attorney's) unlawful deletions from the deeds (as to which see G. L. c. 267, §§ 1, 5), and the relief she sought was not predicated on those acts or on her recordings of the altered deeds. Compare *Barche* v. *Shea*, 335 Mass. 367, 371 (1957); *Fisher* v. *Fisher*, 349 Mass. 675, 677 (1965); *Peres* v. *Miranda y Costa*, 3 Mass. App. Ct. 719 (1975).

3. *Conditioning specific relief on recognition of the easement.* The specific relief sought by the wife was an order directing the husband to execute a deed or deeds conveying the residential properties to her without reservation of a beach easement. The relief was predicated on her contention that the parties' oral agreement in 1976, which she fully performed by her conveyance of the commercial property to the husband in that year, contemplated a conveyance to her of the residential properties, no mention having been made of the reservation of an easement. On the last point, however, the judge's findings went against the wife. For present purposes, it is immaterial whether the judge found that the parties agreed to the reservation of a beach easement or failed to reach agreement on the point. As the party seeking specific performance, the wife had the burden of proving the terms of the contract she sought to enforce. See *P.J. Riley & Co.* v. *Aberthaw Constr. Co.*, 3 Mass. App. Ct. 275, 277 (1975). Clearly the judge was not persuaded by the evidence that the parties had agreed to a conveyance of the residential properties free of any reservation of beach rights. The judge cannot be said to have erred in refusing to order a conveyance to the

wife of more than she proved was the subject of the agreement.

4. *The husband's claim for a declaration that the 1979 and 1984 conveyances are void and for recognition of a tenancy in common.* The assumptions underlying the relief sought by the husband in his counterclaim seem to be that the divorce in 1978 converted the parties' tenancy of the residential properties into tenancies in common[5] and that the unauthorized alterations of the deeds had the legal effect of voiding the residential conveyances, restoring the tenancies in common. If this were true, the husband would presumptively be entitled to equitable relief to remove the cloud on his title represented by the recorded deeds. *Burns* v. *Lynde*, 6 Allen 305, 312 (1863). Appropriate relief could take the form requested by the husband in his counterclaim: a deed executed by the wife conveying the residential properties to herself and her husband as tenants in common.

The decisional law, however, does not support the assumption that the alterations voided the conveyances. It is true that the unauthorized alterations of the deeds prior to recording, being material in that they purported to change the deeds' legal effect, *Mindell* v. *Goldman*, 309 Mass. 472, 474 (1941), invalidated the deeds, *Chessman* v. *Whittemore*, 23 Pick. 231, 233 (1839), but they did not invalidate the conveyances that had been effected by those deeds. *Id.* at 234. *Kendall* v. *Kendall*, 12 Allen 92, 93 (1866). *Carr* v. *Frye*, 225 Mass. 531, 532-533 (1917). *Smigliani* v. *Smigliani*, 358 Mass. 84, 90-91 (1970). These conveyances were complete on the execution and delivery of the deeds, before the wife and her attorneys caused the alterations to be made. "When

---

[5]Although the point is not material to our decision, the assumption may not be correct. The deeds by which the parties acquired the residential properties created joint tenancies, expressly excluding tenancies by the entirety. While a divorce converts a tenancy by the entirety into a tenancy in common, *Bernatavicius* v. *Bernatavicius*, 259 Mass. 486, 490 (1927), that result flows from the principle that a tenancy by the entirety cannot exist between unmarried persons. *Finn* v. *Finn*, 348 Mass. 443, 446 (1965). The same is not true of a simple joint tenancy with rights of survivorship. See G. L. c. 184, § 7, both before and after its amendment by St. 1979, c. 239.

a person has become the legal owner of real estate, he cannot transfer it or part with his title, except in some of the forms prescribed by laws. The grantee may destroy his deed, but not his estate." *Carr* v. *Frye*, 225 Mass. at 533, quoting from *Chessman* v. *Whittemore*, 23 Pick. at 234.

The husband was thus entitled, at most, to equitable relief setting the record straight as to the existence of his reserved easement. There was no reason that this relief could not take the form adopted by the judge: namely, the execution by the husband of substitute deeds to take the place of the invalidated ones; although, as the husband correctly argues, the judgment should also declare the invalidity of the recorded deeds, so that the recording of it and the substitute deeds together will tell the complete story to one later searching the titles.

There remains the fact that the judgment calls for an easement narrower in scope than those reserved in the 1979 and 1984 deeds. On the particular facts of this case, that restriction of the easement language, viewed as a condition to the equitable relief sought by the husband (see *Jurewicz* v. *Jurewicz*, 317 Mass. 512, 516 [1945]), lay within the broad discretion of a judge sitting in equity. It was apparent from the husband's offer of proof that the easement language he inserted in the deeds was far broader in scope than the easement that he offered to prove he had discussed with the wife before she conveyed the commercial property to him in 1976. The offer of proof contained no mention of vehicular access, of parking rights, or of hereditary rights.[6] Even if the parties' discussions never culminated in agreement on the reservation and scope of the easement, the wife conveyed the commercial property and the husband accepted it on the assumption that they had an agreement. The judge could properly infer from that and from the husband's offer of proof that any difference between the parties as to the reservation of the easement was treated by them as insubstantial in relation to the main object. Any lack of explicit agreement on the easement,

---

[6]The offer of proof mentioned use of the garage as a workshop, but the husband is not pressing that point.

in these circumstances, should not enable the husband to burden the wife now with a broader easement than the one he was seeking in 1976. The judge in effect applied the familiar principle that "[h]e who seeks equity must do equity." *New England Merchs. Natl. Bank* v. *Kann*, 363 Mass. 425, 428 (1973). There was no abuse of discretion in imposing such an equitable condition on the relief granted to the husband.

5. *Form of judgment.* The judgment as written has a technical problem which need not be detailed but which can be corrected if it is amended to redefine the easement of passage by foot, as it will appear in the confirmatory deed or deeds, so that it will run in the least obtrusive fashion practicable along the southerly boundary of the combined residential properties from Main Street to the beach. The judgment should also declare explicitly that the 1979 and 1984 deeds are null and void. To avoid any possible question concerning the efficacy of a deed creating an easement, executed by only one of two or more individuals holding undivided partial interests in a servient estate (see *Adam* v. *Briggs Iron Co.*, 7 Cush. 361, 366-370 [1851]; *Clark* v. *Parker*, 106 Mass. 554, 557 [1871]; *Silverman* v. *Betti*, 222 Mass. 142, 145-146 [1915]; *Clapp* v. *Atwood*, 300 Mass. 540, 542 [1938]), it is advisable also to amend the judgment to call for the confirmatory deed or deeds to take the form of a conveyance by both parties to the wife in fee, subject to the easement reserved for the life of the husband.

The judgment is to be amended as indicated in part 5 of this opinion and, as so amended, is affirmed.

*So ordered.*

DREBEN, J. (concurring). I am not sure on what basis the decision of the majority rests. To the extent that it rests on a judge's equitable powers in terms of contract principles, I am in full accord; to the extent that it rests on powers to interfere with conveyances I am in disagreement.