## In the Matter of Marc Sturtz.

Bristol. March 6, 1991. - May 8, 1991.

Present: Liacos. C.J., Wilkins. Abrams. Nolan, & Lynch. JJ

*Guardian*, Incompetent person, Consent to medical treatment. *Incompetent Person*, Consent to medical treatment. *Moot Question. Practice, Civil*, Moot case.

There was no occasion for this court to answer constitutional questions raised in an appeal from a judgment of dismissal properly entered by reason of mootness of the case. [58-60]

Petition filed in the Bristol Division of the Probate and Family Court Department on September 20, 1989.

The case was heard by *Elizabeth O'Neill LaStaiti*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*Ellen L. Nelson* for Marc Sturtz.

*Roderick MacLeish, Jr.* (*Erik J. Frick* with him) for Behavior Research Institute, Inc.

*James M. Shannon*, Attorney General, *Stanley Eichner & Marjorie Heins*, Assistant Attorneys General, *Steven J. Schwartz & Robert D. Fleischner*, for the Commonwealth & others, amici curiae, submitted a brief.

*Robert A. Sherman*, for Massachusetts Association of Approved Private 766 Schools & another, amici curiae, submitted a brief.

Abrams J. Marc Sturtz appeals from a May 25, 1990, judgment appointing his parents as his permanent guardians and authorizing them to monitor the administration of a behavior modification treatment plan at the Behavior Research Institute, Inc. (BRI). Sturtz requested that the guardianship

be discharged.[1] On January 4, 1991, a Probate Court judge found Sturtz to be competent to manage his own affairs, and discharged the guardianship. The case therefore is moot. Nonetheless, Sturtz urges us to answer the questions raised by his appeal, contending that these questions are of substantial public interest and are capable of repetition, yet evading review. We granted direct appellate review. We conclude that the case is moot and that we should not decide the constitutional issues raised by Sturtz's appeal.

Sturtz's main contention on appeal is that his placement by his parents in BRI under a treatment plan authorizing restraint of liberty and aversive procedures was tantamount to involuntary commitment to a mental institution. Sturtz argues that courts can authorize involuntary commitment only upon a finding that a failure to hospitalize the person would result in a likelihood of serious harm to himself or to others. See G. L. c. 123, § 7; G. L. c. 201, § 6 (1988 ed.); *Doe* v. *Doe*, 377 Mass. 272, 277 (1979). Sturtz asserts that the same standard must be applied when a guardian seeks to admit an incompetent ward to any mental health facility where his liberty may be restricted. The judge determined that Sturtz presented a likelihood of serious harm to himself. The judge authorized his treatment based on the substituted judgment standard. Sturtz concludes that the judge's ruling was erroneous because it was based on the wrong standard.

"It is the general rule that courts decide only actual controversies. We follow that rule, and normally we do not decide moot cases." *Metros* v. *Secretary of the Commonwealth*, 396 Mass. 156, 159 (1985). *Blake* v. *Massachusetts Parole Bd.*, 369 Mass. 701 (1976). *Vigota* v. *Superintendent of Boston State Hosp.*, 336 Mass. 724, 725-726 (1958). "Courts decline to [decide] moot cases because (a) only factually concrete disputes are capable of resolution through the adversary process, (b) it is feared that the parties will not

---

[1]After the appeal was entered, a single justice of this court remanded the matter to the Probate Court on BRI's motion that the appeal be dismissed as moot because Sturtz was now competent.

adequately represent positions in which they no longer have a personal stake, (c) the adjudication of hypothetical disputes would encroach on the legislative domain, and (d) judicial economy requires that insubstantial controversies not be litigated." *Wolf* v. *Commissioner of Pub. Welfare*, 367 Mass. 293, 298 (1975). While we have on occasion answered a question in moot cases where it was of public importance, fully argued, and capable of repetition, yet evading review, *Commonwealth* v. *Yameen*, 401 Mass. 331 (1987), cert. denied, 486 U.S. 1008 (1988), we are particularly reluctant to answer constitutional questions which have become moot. See *Cobb* v. *Cobb*, 406 Mass. 21, 23 (1989). *Solimento* v. *State Racing Comm'n*, 400 Mass. 397, 402 (1987).

The case before us is not characterized by those factors which might justify an exception to our general rule against answering questions in moot cases. The case is not one which is capable of repetition, yet evading review. As Sturtz notes, a permanent guardianship may be of long duration, and thus the issues clearly may be litigated before such a guardianship terminates.

Nothing in the record before us indicates that Sturtz is likely to find himself facing the same issue in similar factual circumstances. If, as Sturtz contends, there is tension between the involuntary commitment standard and the substituted judgment standard, then such tension should be resolved in a factually concrete case. See *Wolf, supra.*

In addition, no class of similarly situated persons is before us. The record does not demonstrate that Sturtz is an adequate representative of any other persons similarly situated. See *Wolf, supra* at 298. Therefore, "[w]e conclude in our discretion that we should not offer our views on constitutional questions that will not necessarily arise again in substantially the same form." *Lockhart* v. *Attorney Gen.*, 390 Mass. 780, 785 (1984).

The appeal is dismissed as moot.

*So ordered.*