MERLE D. OTT & another[1] *vs.* BOSTON EDISON COMPANY.

Suffolk. September 14, 1992. - November 10, 1992.

Present: LIACOS, C.J., WILKINS, ABRAMS, O'CONNOR, & GREANEY, JJ.

*Practice, Civil,* Moot case. *Moot Question.*

There was no occasion for this court to express its views on the substantive
issue on appeal of an action by stockholders against a corporation,
where the substantive issue was moot since it was no longer in contro-
versy, the plaintiff appellants having attained by another process the
objective that they sought by commencement of their action; the issue
was not likely to recur between the parties or people similarly situated;
and, even if it did recur, a timely and final judicial resolution of it
would be possible. [682-685]

CIVIL ACTION commenced in the Superior Court Depart-
ment on March 8, 1991.

The case was heard by *Barbara A. Dortch,* J., on motions
for summary judgment.

The Supreme Judicial Court granted a request for direct
appellate review.

*David S. Godkin (Gordon H. Hayes* with him) for the
plaintiffs.

*John D. Donovan, Jr. (Matthew M. Burke* with him) for
the defendant.

*Stephen S. Ostrach & Emily R. Livingston,* for New Eng-
land Corporate Counsel Association & another, amici curiae,
submitted a brief.

WILKINS, J. The substantive issue in this appeal is no
longer in controversy and is moot because the plaintiff appel-
lants have attained by another process the objective that they
sought by the commencement of this action. The circum-

---

[1]Mary C. Ott.

stances do not justify or require an expression of our views on the substantive issue. The issue is not likely to recur between the parties or people similarly situated and, if it did, a timely and final judicial resolution of it would be possible.

Merle D. Ott has been a stockholder of the defendant Boston Edison Company (Edison) since 1988. Mary C. Ott, having a proxy from her husband, attended Edison's May, 1990, annual stockholders' meeting. At that meeting, she sought to present a resolution for stockholder action that would direct Edison to cease the generation of commercial electric power at Edison's Pilgrim station if certain circumstances occurred.[2] The presiding officer ruled that the resolution was out of order.

In November, 1990, more than five months before Edison's 1991 annual stockholders' meeting, the Otts submitted a proposal for inclusion in Edison's proxy statement for that meeting. That proposal included a resolution that, if adopted, would recommend that Edison immediately shut down its Pilgrim nuclear power station because "the potential for physical harm and the risk of plant-related liabilities outweigh the inherent profit potential from continuing Pilgrim operations." After intermediate correspondence between the Otts and Edison, Edison advised the Otts at the end of December, 1990, that Edison had decided to omit the Otts' proposal from its 1991 proxy statement because the Otts failed to meet the eligibility requirements of rule 14a-8 (a) (1) of the Securities and Exchange Commission (SEC). See 17 C.F.R. § 240.14a-8 (a) (1) (1992). That regulation grants a right to a stockholder of a company like Edison to submit a proposal for stockholder action if the stockholder owns at

---

[2]The full proposed resolution was: "RESOLVED, that the shareholders of the Boston Edison Company do hereby irrevocably direct the management of the Company to immediately cease generation of commercial electrical power and plan for the orderly retirement of Pilgrim Station upon delivery to the Company of scientific validation of information by the Duxbury-based 'Citizens Radiological Monitoring Network', if and only to the extent that such study demonstrates that the generation of electrical power from Pilgrim Station is increasing radiation risk, and thereby impacting the health of Pilgrim's neighbors."

least 1% or $1,000 in market value of the securities entitled to vote at a stockholders' meeting. It is undisputed that the Otts did not meet the eligibility standard of the SEC rule.

Prior to the May 2, 1991, annual meeting, the Otts commenced this action seeking preliminary injunctive relief that would direct Edison to include the Otts' proposal in Edison's 1991 annual meeting proxy statement and would enjoin Edison from interfering with the presentation of the Otts' resolution at that meeting. They also sought a declaration that Edison had interfered with their right under Massachusetts law to present their proposal to Edison's stockholders. A Superior Court judge denied the Otts' request for preliminary relief. In the summer of 1991, another judge awarded Edison summary judgment, ruling that Edison had not violated the law of the Commonwealth in omitting the Otts' proposal from the notice and proxy statement for the 1991 annual stockholders' meeting and in ruling that their 1990 proposal was out of order. We granted the Otts' application for direct appellate review.

In November, 1991, approximately two months after judgment had been entered in the Superior Court, the Otts, joined by another Edison stockholder so as to meet the eligibility requirement of the SEC rule, presented to Edison a proposed resolution and supporting statement for inclusion in the proxy statement for Edison's 1992 annual stockholders' meeting. The proposed resolution was the same as that which the Otts had sought to present to the 1991 annual meeting. Edison submitted the proposal to its 1992 annual meeting on April 28, 1992, where it was defeated.

There is no current actual controversy warranting declaratory relief as to the Otts' rights concerning earlier stockholders' meetings. We could not give them retroactive relief, even. if Edison had acted improperly in any respect. The Otts have attained their objective of a stockholders' vote on their proposed resolution. They need no prospective relief. The Otts, nevertheless, argue against a finding of mootness, claiming that they would be entitled to attorneys' fees, if they were successful on the merits of their claim (a point we assume in

their favor without deciding it). A potential claim for attorneys' fees standing alone does not justify deciding a moot case. See *Brookline Citizens to Protect the Parks Taxpayer Group* v. *Selectmen of Brookline*, 27 Mass. App. Ct. 1191, 1192 (1989).

We have on occasion exercised our discretion to answer questions in moot cases where certain conditions existed: (1) the issue was fully argued on both sides; (2) the question was certain, or at least very likely, to arise again in similar factual circumstances; (3) where appellate review could not be obtained before the recurring question would again be moot; and (4) most importantly, the issue was of public importance. See *Lockhart* v. *Attorney Gen.*, 390 Mass. 780, 783 (1984), and cases cited. See also *Matter of Sturtz*, 410 Mass. 58, 59-60 (1991).

The considerations bearing on whether this court should exercise its discretion to answer the question in this moot case lead us to decline to do so. The requirement that the issue be fully briefed does not so much instruct us to decide a moot issue as it instructs us not to pass on a moot issue that has not been fully briefed. The issue has been fully briefed.

We are not persuaded that the issue is likely to arise again in similar factual circumstances. As long as the SEC rule, or some similar rule permitting stockholders to make proposals to stockholders' meetings, exists granting rights to minority shareholders to present matters to stockholders' meetings, the question whether, under Massachusetts law, a stockholder may insist on the presentation of a proposal to an annual stockholders' meeting of a publicly held company need not arise.[3] The Otts satisfied the condition of ownership set forth in the SEC rule by combining with another stockholder to insist on the presentation of their proposal. In realistic terms, the Otts and other persons similarly situated do not need an answer to the question of their right under Massachusetts

[3]A different issue would exist as to the rights of a stockholder in a corporation not subject to the requirements of the SEC rule. The Otts do not represent the interests of a stockholder in such a corporation.

law to present a matter to an annual Edison stockholders' meeting.[4] See *Matter of Sturtz, supra* at 60; *M.C.* v. *Commissioner of Correction*, 399 Mass. 909, 911-912 (1987). At this stage, any appropriate interest the Otts may have in the question of their common law rights is academic.

Moreover, it is not at all apparent that the issue, if it were to arise again, could not be decided on appeal before it would become moot. The issue would not be apt to evade review if the stockholder or stockholders are diligent in pursuing their claimed rights. See *M.C.* v. *Commissioner of Correction, supra* at 911. The question is one of law. It would presumably be presented on a stockholder's request for preliminary relief. A trial court ruling on such a request could be obtained within a short time, and that ruling could be subjected to prompt consideration by a single justice of the Appeals Court. See G. L. c. 231, § 118 (1990 ed.). The trial court ruling would also be capable of prompt review by the Appeals Court. *Id.*[5] Our appellate system has the capacity to move rapidly when circumstances warrant prompt resolution of an important issue.

The question whether an issue is of public importance is one of degree. Certainly the extent of the right of a stockholder in a Massachusetts corporation to have a proposal submitted to the corporation's annual meeting is one of possible general concern to such stockholders and companies. On the other hand, the issue is not one of broad public importance.[6] In any event, any answer to the question would be of

---

[4]Their rights under Massachusetts law as to any special meeting of Edison's stockholders are governed by G. L. c. 156B, § 34 (*b*) (1990 ed.), under which only stockholders who hold at least 40% of the stock that is entitled to vote at such a meeting may insist on the call of a special meeting. As to corporations not registered under the Securities Exchange Act of 1934, 10% of the stockholders may insist that a special meeting be held. G. L. c. 156B, § 34 (*a*) (1990 ed.).

[5]Additionally, the general superintendence authority of this court (G. L. c. 211, § 3 [1990 ed.]) could be invoked in the court's discretion and direct appellate review by this court could be requested.

[6]If, as Edison argues (see G. L. c. 156B, § 33 [1990 ed.]), the answer lies in the meaning of provisions in particular by-laws of the corporation,

potential importance only to stockholders in closely held corporations (and not to the Otts or other stockholders in publicly held corporations). In such cases, the relevant considerations bearing on the answer might be quite different from those bearing on the rights of stockholders in publicly held companies.

This court should not encourage the appellate pursuit of an issue that has become moot and in which the appellant's only appropriate interest is academic. Any interest in vindication of an unsuccessful position in a lower court cannot justify this court's expenditure of time to resolve the issue. The Otts should have abandoned their appeal once Edison submitted their proposal to its 1992 annual stockholders' meeting.

The judgment shall be vacated with the notation that the decision is not on the merits and on remand a judgment shall be entered dismissing the action as moot.

*So ordered.*

---

the issue diminishes as one of general concern. If, as the Otts argue, the question is one of common law right, because no statute controls the right, the question has somewhat greater general importance.