JOHN DOE *vs.* MASSACHUSETTS PAROLE BOARD & another.[1]

No. 10-P-1383.

Hampshire. December 15, 2011. -- December 5, 2012.

Present: RAPOZA, C.J., CYPHER, & SULLIVAN, JJ.

*Parole. Sex Offender. Sex Offender Registration and Community Notification Act. Administrative Law,* Rulemaking. *Global Positioning System Device. Due Process of Law,* Parole, Sex offender, Polygraph test. *Constitutional Law,* Parole, Sex offender, Polygraph test, Self-incrimination. *Administrative Law,* Exhaustion of remedies. *Attorney General.*

In a civil action brought in Superior Court, there was no error in the dismissal of the plaintiff parolee's claim that the adoption by the parole board (board), without formal rulemaking, of the intensive parole for sex offenders policy violated G. L. c. 30A, § 5, where the policy's conditions were not rules of general application within the statute, in that they were internal guidelines directed to board employees to be considered for all sex offenders rather than regulations, and could be varied by the board in individual cases. [856-857]

Statement that the modification of the conditions of parole to include global positioning system (GPS) monitoring requirements gives rise to a liberty interest cognizable under art. 12 of the Massachusetts Declaration of Rights, deriving from a parolee's status, i.e., having been released on conditions, and the fact that GPS monitoring conditions are a restraint on liberty that constitutes a form of punishment. [857-859]

The modification by the parole board of a parolee's parole conditions to impose a global positioning system monitoring requirement, in the absence of any evidence of a change in circumstances warranting such a condition, constituted an arbitrary deprivation of liberty and thereby violated the due process clauses of the United States Constitution and the Massachusetts Declaration of Rights. [859-861]

This court declined to consider the claims of a parolee as to the existence of a constitutionally protected liberty interest in freedom from the imposition by the parole board (board) of one or more of the conditions under the board's intensive parole for sex offenders policy. [861]

This court declined to consider a parolee's claim that the imposition by the parole board (board) of conditions under the board's intensive parole for sex offenders policy, requiring the disclosure to the board of his psychotherapy treatment and polygraph test records, constituted a compelled waiver of his right under the State and Federal Constitutions to be free

[1]Attorney General.

from self-incrimination, where the parolee did not allege that he had been asked or compelled to disclose any prior crimes in therapy, or to otherwise incriminate himself in any way; where nothing in the record suggested that his refusal to incriminate himself in therapy would automatically result in the revocation of his parole; and where he did not show that he had either refused to answer polygraph questions and suffered adverse consequences, or that his refusal to answer such questions automatically would result in such consequences. [861-862]

This court declined to consider a parolee's claims that the imposition by the parole board (board) of a condition under the board's intensive parole for sex offenders policy restricting his Internet usage impinged on his rights of free speech and association in violation of the First Amendment to the United States Constitution and was not reasonably related to the goals of his parole, where the parolee could have, but had not, asked his parole officer or the board for relief from the condition. [862]

In a civil action arising from a plaintiff parolee's challenge to certain conditions of parole imposed on sex offenders, there was no error in the dismissal of the Attorney General as a party. [862-863]

CIVIL ACTION commenced in the Superior Court Department on February 13, 2007.

Motions to dismiss were heard by *Mary-Lou Rup*, J.; a motion for summary judgment was heard by *Bertha D. Josephson*, J.; and a motion for relief from judgment and a renewed motion for a preliminary injunction, filed on September 17, 2009, were also considered by her.

*Stephen R. Kaplan* for the plaintiff.

*Amy L. Karangekis*, Assistant Attorney General, for the defendants.

SULLIVAN, J. This is an appeal from decisions of the Superior Court concerning a parolee's constitutional and statutory challenges to the conditions of parole imposed on sex offenders. Among the conditions John Doe challenges is the requirement that he wear a global positioning system (GPS) monitoring device. We vacate the portion of the judgment that dismissed Doe's constitutional challenge to the imposition of GPS monitoring. In all other respects the judgment is affirmed.

*Background. 1. Doe's parole and parole revocation.* Doe was convicted of kidnapping and rape in 1988, and was sentenced to a term of thirty years at the Massachusetts Correctional Institution at Concord. He was paroled in 1992. His parole was revoked in 1994 when he was charged with threatening to commit murder,

making threatening telephone calls, and assault and battery by means of a dangerous weapon, to wit, repeatedly ramming his girlfriend's car with his half-ton pickup truck. Doe admitted to the charges, stating that he had been under the influence of alcohol, and was returned to custody. He was paroled again on August 13, 1998. At that time, the Massachusetts Parole Board (parole board) imposed special conditions of parole, including a "stay away" order, completion of the phase 4 sex offender program, supervision for drug use and liquor abstinence, attendance at mandatory sex offender group counselling, and mandatory Alcoholics Anonymous (AA) counselling.

In November of 2000, the parole board added periodic polygraph testing to Doe's conditions of parole. In 2002, with the passage of the Sex Offender Registry Law, G. L. c. 6, §§ 178I, 178J, 178K(2)(B), the Sex Offender Registry Board (SORB) classified Doe as a level 2 sex offender.[2] See generally *Doe, Sex Offender Registry Bd. No. 8725* v. *Sex Offender Registry Bd.*, 450 Mass. 780 (2008) (*Doe No. 8725*). In time, this classification triggered additional special conditions of parole.

*2. Intensive parole conditions for sex offenders.* In June of 2004 the parole board added sex offender (SEXA) conditions to its policies governing the parole of sex offenders. In November of 2006 the parole board promulgated the intensive parole for sex offenders (IPSO) policy, 120 par. 606. The IPSO policy provided that all sex offenders under IPSO supervision also would be subject to the SEXA conditions specified in 120 par. 360.[3] The IPSO policy provided that level 1, 2, or 3 sex offenders automatically were subject to the IPSO conditions. The nature of the conditions varied according to whether the parolee was a level 1, 2, or 3 sex offender. Because Doe had been designated a level 2 sex offender, the parole board, at Doe's parole officer's request, imposed the IPSO conditions in October of 2006. Under the IPSO policy, the parole board retains the right to modify the IPSO conditions for parolees. It did so on October 24, 2006, modifying the level 2 sex offender condition

[2]Doe did not appeal this classification.

[3]We refer to the IPSO policy, which also incorporates the SEXA conditions, as the IPSO conditions.

barring out-of-State travel to permit Doe to travel to Connecticut for his job as a construction worker.

Thereafter, the General Court adopted G. L. c. 127, § 133D ½, effective December 20, 2006, which required the imposition of GPS tracking on all parolees under "court ordered parole supervision" for a sex offense, as defined in G. L. c. 6, § 178C. St. 2006, c. 303, § 7. As a result of this legislation, the parole board required Doe to wear a GPS monitor, but did not impose any geographic delineation of exclusion zones.

While this appeal was pending, Doe was reclassified as a level 1 sex offender, and certain parole conditions were modified.[4] The following IPSO conditions remain relevant to this appeal: (1) GPS monitoring; (2) polygraph testing at six-month intervals; (3) a ban on using the Internet or computer programs without the permission of a parole officer; and (4) a waiver consenting to the release of all treatment records and polygraph tests to the parole board, the Attorney General, the appropriate district attorney, and law enforcement.

3. *Superior Court litigation.* Doe's complaint, filed on February 13, 2007, challenged G. L. c. 127, § 133D ½, and the constitutionality of the IPSO conditions, both on their face and as applied to him, and on ex post facto, double jeopardy, and due process grounds. This complaint was brought against the parole board, SORB, and the Attorney General pursuant to G. L. c. 12, § 11I (civil rights); G. L. c. 231A, § 6 (declaratory judgment); G. L. c. 212, § 4 (equity); and G. L. c. 214, § 1B (privacy). He also challenged the authority of the parole board to issue the IPSO conditions without formal rulemaking. A Superior Court judge dismissed the claims against SORB and the Attorney General, and the nonconstitutional claims against the parole board on a motion to dismiss. Subsequently, a second judge ruled that the GPS monitoring system was not punish-

---

[4]As a result, his appeal with respect to the parole board's imposition of the level 2 IPSO conditions, i.e., prohibition on out-of-State travel, evening house curfew, limits on socialization with those under eighteen years of age, maintenance of daily logs, and notification of sex offender status in certain personal relationships, has been mooted. See *Blake* v. *Massachusetts Parole Bd.*, 369 Mass. 701, 703 (1976); *Ott* v. *Boston Edison Co.*, 413 Mass. 680, 682-683 (1992).

ment, but a permissible term of parole, and allowed summary judgment in favor of the parole board on the remaining claims.

4. *Postjudgment proceedings.* After judgment had entered in the Superior Court, and while Doe's appeal was pending, the Supreme Judicial Court held that wearing a GPS device was "punitive in effect," and created a "substantial burden on liberty." *Commonwealth* v. *Cory,* 454 Mass. 559, 572 (2009). The court further held that the automatic retroactive application of G. L. c. 265, § 47 (requiring GPS monitoring) to probationers, and the automatic retroactive application of G. L. c. 127, § 133D ½, to parolees, violated the Federal and the State Constitutional prohibitions against ex post facto laws. See *ibid.* (probation); *Doe* v. *Chairperson of the Mass. Parole Bd.,* 454 Mass. 1018, 1019 (2009) (parole) (*Chairperson*). However, the court also held that a sentencing judge retained the "discretionary power in an individual case" to require that a probationer wear a GPS monitor when setting the terms of probation. *Cory, supra.*

In response to these cases, the parole board initiated a review of parolees subject to the GPS monitoring and exclusion zone requirements. The parole board reviewed each file, the written recommendation of the parole officer, and the perceived risk. It did not notify Doe of this review. On September 23, 2009, the parole board reimposed the GPS monitoring condition on Doe "because of the crimes he committed while on parole," a reference to the 1994 charges and subsequent conviction.

Around this time, Doe filed a motion for relief from judgment and a renewed motion for a preliminary injunction, challenging both G. L. c. 127, § 133D ½, and the IPSO conditions. The second judge denied the motion on the grounds, among others, that a parolee does not have a liberty interest in parole, and that even if a liberty interest existed, a parolee has no right to a hearing in advance of the imposition of additional conditions. The judge also found that an individualized determination had been conducted.

On September 17, 2010, after Doe's motion for relief from judgment and for a preliminary injunction was heard and decided, the Supreme Judicial Court decided *Commonwealth* v. *Goodwin,* 458 Mass. 11 (2010). *Goodwin* held that the addition of

GPS monitoring, coupled with exclusion zones, to the terms of probation created a "substantial burden on liberty" in the absence of a material change in circumstances, and violated the Commonwealth's common-law prohibition against double jeopardy. *Id.* at 22-23, quoting from *Cory, supra.*[5]

*Discussion.* 1. *Administrative procedure.* Doe maintains that the adoption of the IPSO conditions without formal rulemaking violates G. L. c. 30A, § 5, and that the dismissal of this claim was error. Our review of the allowance of a motion to dismiss is de novo. *Curtis* v. *Herb Chambers I-95, Inc.,* 458 Mass. 674, 676 (2011).

The parole board acknowledges that it did not follow rulemaking procedures, and argues that it need not have done so. The parole board is authorized by statute to set the terms and conditions of parole. See G. L. c. 30, § 1; G. L. c. 127, § 130. General Laws c. 127, § 131, requires that parolees adhere to the dictates of the parole board. Moreover, the parole board has adopted comprehensive regulations concerning parole supervision that permit the parole board to set conditions of parole in accordance with the authority granted to it under G. L. c. 27, § 5. See 120 Code Mass. Regs. § 300.07 (2000). In the absence of other statutory or constitutional limitations, the parole board retains broad discretion in setting the conditions of parole. G. L. c. 127, § 130. *Greenman* v. *Massachusetts Parole Bd.,* 405 Mass. 384, 385-386 (1989).

The parole board's IPSO conditions set forth a series of conditions to be considered for all sex offenders. The IPSO conditions are internal guidelines, directed to parole board employees to assist them in the performance of their duties, not regulations.[6] See

[5]On March 25, 2011, the parties filed an "agreement of dismissal of appeal from orders and judgment in favor of" SORB. We do not address Doe's claims in his brief regarding SORB. The parole board's decision to lift the automatically applied IPSO conditions and conduct an individualized review moots the ex post facto claim under *Cory, supra,* against the parole board. See *International Marathons, Inc.* v. *Attorney Gen.,* 392 Mass. 376, 379-380 (1984); *Matter of Sturtz,* 410 Mass. 58, 59-60 (1991).

[6]The IPSO conditions were attached to and made part of Doe's amended complaint filed in August of 2007. We therefore may consider the IPSO conditions for purposes of reviewing the motion to dismiss. See *Schaer* v. *Brandeis Univ.,* 432 Mass. 474, 477 (2000); *Melia* v. *Zenhire, Inc.,* 462 Mass. 164, 165-166 (2012).

*Massachusetts Gen. Hosp.* v. *Rate Setting Commn.*, 371 Mass. 705, 706-707 (1977); *Commonwealth* v. *Trumble*, 396 Mass. 81, 88-89 (1985).[7] The IPSO policy also provides that the parole board may vary the IPSO conditions in individual cases, as it did here by lifting the out-of-State travel restriction. The IPSO conditions therefore are not rules of general application within the meaning of G. L. c. 30A, § 5. See *Associated Indus. of Mass.* v. *Commissioner of Ins.*, 356 Mass. 279, 282-284 (1969); *Construction Indus. of Mass.* v. *Commissioner of Labor & Indus.*, 406 Mass. 162, 171 (1989). This claim properly was dismissed.

2. *GPS monitoring.* Doe challenges the GPS conditions as they are applied to him on the grounds that there is a liberty interest in remaining free of GPS monitoring conditions.[8] He also argues that there was no evidence on which to base a finding that imposition of GPS monitoring or other IPSO conditions was warranted because he had been on parole for eight years without incident, had complied with the terms of parole, and was described as a "model parolee" with "no problems." Doe further argues that he was entitled to a predeprivation hearing, together with the full panoply of procedural protections similar to those afforded by the sex offender registry law. The parole board argues that there is no liberty interest in parole, and that consequently there could be no substantive or procedural due process violations.

In reviewing the allowance of a motion for summary judgment, we view the evidence in the light most favorable to Doe and determine whether the parole board is entitled to judgment as a matter of law. See *Cassesso* v. *Commissioner of Correction*, 390 Mass. 419, 422 (1983); *Dennis* v. *Kaskel*, 79 Mass. App. Ct. 736, 740 (2011). We review the legal issues de novo. See *Utica Mut. Ins. Co.* v. *Fontneau*, 70 Mass. App. Ct. 553, 556 (2007).

---

[7]General Laws c. 30A, § 1C, provides that the parole board must comply with §§ 1 through 8 of G. L. c. 30A. General Laws c. 30A, § 5, defines the term "regulation."

[8]Certain claims against the parole board argued below, including the privacy claim and facial challenge to the constitutionality of the IPSO procedures, have not been argued on appeal and are deemed waived. See *Lima* v. *Lima*, 30 Mass. App. Ct. 479, 485 (1991). In any event, we agree with the parole board that the true nature of Doe's claims is a challenge to the IPSO conditions as applied, not on their face.

*A. Liberty interest.* A prisoner in the Commonwealth does not have a liberty interest in the future grant of parole. See *Quegan* v. *Massachusetts Parole Bd.*, 423 Mass. 834, 836 (1996). Once released on conditions, however, "[i]t is not sophistic to attach greater importance to a person's justifiable reliance in maintaining his conditional freedom so long as he abides by the conditions of his release, than to his mere anticipation or hope of freedom." *Morrissey* v. *Brewer*, 408 U.S. 471, 482 n.8 (1972) (citation omitted). Therefore, as a matter of Federal constitutional law, both probationers and parolees have a liberty interest in their continued release once release has been granted. *Id.* at 482 (applying due process principles to parole revocation proceedings). *Gagnon* v. *Scarpelli*, 411 U.S. 778, 782 & n.3 (1973) (same, probation revocation). Likewise, under art. 12 of the Massachusetts Declaration of Rights, a parolee has a substantial interest in preserving that liberty once attained.[9] See *Greenman*, 405 Mass. at 388 n.3; *Chairperson*, 454 Mass. at 1019.

This appeal presents the question whether the modification of the conditions of parole to include GPS conditions, as opposed to reincarceration, gives rise to a liberty interest. The Supreme Judicial Court ruled in *Cory* and in *Chairperson* that GPS monitoring conditions are a form of punishment that are materially different and more onerous than other terms of probation or parole, and that the imposition of GPS monitoring conditions, coupled with exclusion zones, is an intrusive, burdensome, and "serious affirmative restraint" on liberty that is punitive in effect. *Cory*, 454 Mass. at 570. See *Goodwin*, 458 Mass. at 21-23. Thus, there is a liberty interest cognizable under art. 12 that derives from the combination of two sources — Doe's status as

[9]The Attorney General and the parole board argued, and both judges relied on, *Martin* v. *State Bd. of Parole*, 350 Mass. 210 (1966), for the broad proposition that there is no liberty interest in parole, even once parole has been granted. Similarly, the second judge, when hearing the motion for relief from judgment, relied on *Martin* in holding that no hearing was constitutionally required. The Attorney General and the parole board similarly press the arguments on appeal. *Martin* relied on *Escoe* v. *Zerbst*, 295 U.S. 490, 492 (1935), which held that probation was an "act of grace." *Morrissey* specifically rejected the right versus privilege distinction of *Escoe*, and by implication, *Martin*. *Morrissey*, *supra* at 482, 493. See *Gagnon*, *supra* at 782 n.4.

a parolee and the fact that GPS monitoring conditions are a restraint on liberty that constitutes a form of punishment.

B. *Due process.* Because the parole modification was a GPS condition that involved the deprivation of a liberty interest by virtue of the imposition of punishment, we look to the cases limning the contours of due process in probation and parole revocation proceedings for guidance.

"[C]onsiderations of . . . substantive fairness [apply] to probation and parole revocation proceedings." *Bearden* v. *Georgia*, 461 U.S. 660, 666 n.7 (1983). Doe argues that he was deprived of due process because he was ordered to wear a GPS monitor in the absence of evidence that warranted it. The parole board maintains that it has broad discretion under the parole statute to modify parole conditions at any time. See G. L. c. 27, § 5; G. L. c. 127, § 133A.

The provisions of the parole statute, like all statutes, are subject to constitutional limitation. *Morrissey*, 408 U.S. at 482, establishes limitations on the power to revoke parole. *Chairperson, supra,* sets forth a curtailment of the power to add GPS monitoring conditions to parole. We think a literal application of the parole board's argument goes too far since any legislative enactment must, at the very minimum, "bear[] a reasonable relation to a permissible legislative objective." *Aime* v. *Commonwealth*, 414 Mass. 667, 673-674 (1993), quoting from *Rushworth* v. *Registrar of Motor Vehicles*, 413 Mass. 265, 268 (1992). The parole board acknowledges that the conditions of parole must be reasonably related to the goals of supervised release. Cf. *Commonwealth* v. *Pike*, 428 Mass. 393, 403 (conditions of probation that infringe on constitutional rights must be "reasonably related" to goals of sentencing and probation), quoting from *Commonwealth* v. *Power*, 420 Mass. 410, 414 (1995), cert. denied, 516 U.S. 1042 (1996). The parole board's regulations permit the imposition of conditions that are "reasonably related to the crime of the parolee or the parolee's condition," 120 Code Mass. Regs. § 300.07(2) (1997), and authorize an amendment or modification to those terms only "where there is a change in circumstances during the term of parole," 120 Code Mass. Regs. § 101.03(3)(b) (1997).

Here there was no evidence that there was any change in

circumstances upon which to base the modification of parole to impose additional punishment in the form of GPS conditions. The sole basis of the decision to impose the GPS conditions was the 1994 parole violation, from which Doe had been reparoled many years earlier. In the absence of any evidence of a change in circumstances since Doe was reparoled that warrants the imposition of the GPS condition, its imposition constituted an arbitrary deprivation of liberty and thereby violated the due process clauses of the United States Constitution and the Massachusetts Declaration of Rights. See *Douglas* v. *Buder*, 412 U.S. 430, 432 (1973) (State court's revocation of probation was so "devoid of evidentiary support as to be invalid under the Due Process clause of the Fourteenth Amendment," citing *Thompson* v. *Louisville*, 362 U.S. 199 [1960]) (per curiam); *Superintendent, Mass. Correctional Inst. at Walpole* v. *Hill*, 472 U.S. 445, 455 (1985) (due process requires that there be "some evidence from which the conclusion of the administrative tribunal could be deduced" in order to revoke good time credits), quoting from *United States ex rel. Vajtauer* v. *Commissioner of Immigration*, 273 U.S. 103, 106 (1927). See generally *Arciniega* v. *Freeman*, 404 U.S. 4, 4 (1971) (per curiam) (habeas corpus petition granted under Federal parole board regulation requiring "satisfactory evidence" of parole violation where proof of actual violation was lacking).[10] Article 12 likewise prohibits arbitrary punishment. See *Pike*, *supra*. Cf. *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979), and cases cited.[11] Accordingly, the allowance of summary judgment on Doe's claim regarding the imposition of the GPS monitoring conditions was contrary to law.

In light of this disposition, we need not reach Doe's remain-

[10]Cf. *Goodwin*, 458 Mass. at 21-23 (addition of GPS conditions to sentence of probation in absence of change in circumstances impermissibly increases sentence and violates double jeopardy).

[11]Because the due process provisions of art. 12 "afford protection comparable to that supplied by the Fourteenth Amendment," and are "at least equally protective," we also look to the cases decided under the Fourteenth Amendment for guidance in deciding this case under art. 12. *Kenniston* v. *Department of Youth Servs.*, 453 Mass. 179, 183 n.7 (2009). However, while we look to the Federal cases, our decision rests independently on those cases separately articulating limitations on the imposition of GPS monitoring and the prohibition against arbitrary punishment as a matter of State law.

ing due process argument, that is, that he was entitled to notice in advance of the imposition of the modification, and an evidentiary hearing with the assistance of counsel and the right to confront and cross-examine witnesses. See *Stefanik* v. *State Bd. of Parole*, 372 Mass. 726 (1977) (setting forth due process requirements for parole revocation post-*Morrissey*); *Commonwealth* v. *Durling*, 407 Mass. 108, 116-119 (1990) (same, probation); *Commonwealth* v. *Al Saud*, 459 Mass. 221, 232 (2011) (discussing due process and impact of absence of notice in probation revocation proceeding). See also *Buckley* v. *Quincy Div. of the Dist. Ct. Dept.*, 395 Mass. 815, 817 n.1 (1985); *Lanier* v. *Massachusetts Parole Bd.*, 396 Mass. 1018, 1019 (1986); *Greenman*, 405 Mass. at 388 n.3; *Quegan*, 423 Mass. at 836. See generally Cohen, Law of Probation and Parole, § 16:21 (2d ed. 1999).

3. *Other IPSO conditions*. A. *Liberty interest*. Doe argues that he was entitled to notice and a hearing before the imposition of the remaining IPSO conditions. In view of our disposition of Doe's remaining claims,[12] which either are waived, moot, or unsuccessful, we decline to decide whether there is a constitutionally protected liberty interest in freedom from imposition of one or more of the other IPSO conditions. Moreover, we adhere to the view that the parole board should be afforded the opportunity to interpret and apply its own regulations regarding parole modification, and their relationship to the other IPSO conditions, in the first instance. See *Bynum* v. *Commonwealth*, 429 Mass. 705, 710 (1999). See also *Haverty* v. *Commissioner of Correction*, 437 Mass. 737, 740 (2002).

B. *Self-incrimination*. Doe argues that the requirement that his psychotherapist disclose treatment records constitutes a compelled waiver of his right under the State and Federal Constitutions to be free from self-incrimination, and that he is therefore unable to effectively participate in therapy. He does not allege that he has been asked or compelled to disclose any prior crimes in therapy, or to otherwise incriminate himself in any way. Accordingly, there is no issue before us to decide. See

---

[12]Doe has not made a sustained appellate argument on his remaining claims. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975); *Adams* v. *Adams*, 459 Mass. 361, 392 (2011); *Lima* v. *Lima*, 30 Mass. App. Ct. 479, 485 (1991).

generally *Greenman*, 405 Mass. at 389. Moreover, parole revocation proceedings are civil in nature, and there is nothing in the record that suggests that even if asked to do so, refusing to incriminate himself in therapy automatically would result in the revocation of Doe's parole. See *Commonwealth* v. *Hunt*, 462 Mass. 807, 814-815 (2012).

Doe does claim that he has been asked incriminating questions in the course of polygraph testing. The polygraph testing waiver form specifically states that he may remain silent and that he is not obligated to answer. Doe has not placed facts in dispute that show that he either refused to answer and suffered adverse consequences, or that the refusal to answer automatically would result in adverse consequences. See *Commonwealth* v. *Delisle*, 440 Mass. 137, 145 (2003), citing *Minnesota* v. *Murphy*, 465 U.S. 420, 438-439 (1984) (no compulsion or violation of Fifth Amendment where revocation of probation was not automatic).

C. *Free speech and association.* Doe argues that the restriction on Internet usage impinges on his rights of speech and association in violation of the First Amendment to the United States Constitution. Doe also argues that this condition is not reasonably related to the goals of his parole because he was not charged with any pornography or computer-related sex crime. Cf. *Commonwealth* v. *Lapointe*, 435 Mass. 455, 459 (2001) (conditions of probation that are "reasonably related" to terms of supervised release are permissible). Compare *Pike*, 428 Mass. at 404-405 (banishment from Massachusetts so unrelated to legitimate interests that it exceeds constitutional bounds). We decline to decide this question in view of the fact that Doe could, but has not, asked his parole officer or the parole board for relief from this condition. See G. L. c. 231A, § 3 (obligation to exhaust administrative remedies in declaratory judgment proceedings); *Commonwealth* v. *Argueta*, 73 Mass. App. Ct. 564, 569 (2009) (as matter of prudence, court should not address questions of constitutional dimension unless necessary). Summary judgment was warranted on this claim.

4. *Claims against Attorney General.* Doe has failed to articulate below or on appeal any theory of liability against the Attorney General, other than the fact that the Attorney General is obligated

to defend the laws of the Commonwealth. Doe has not cited any authority in his appellate brief or made any argument suggesting why the Attorney General is a proper party to this suit, or that the Attorney General is necessary for purposes of declaratory or injunctive relief. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975); *Adams* v. *Adams*, 459 Mass. 361, 392 (2011). There was no error in dismissing the Attorney General.

*Conclusion.* So much of the judgment as dismissed the constitutional challenge to the imposition of GPS monitoring is vacated, and we remand the case to the Superior Court for proceedings consistent with this opinion. In all other respects, the judgment is affirmed.

*So ordered.*